202 So.2d 372 (1967)
Mrs. Blanche Chenevert PICARD
v.
Sidney S. JOFFRION, Jr. and Southern Farm Bureau Casualty Insurance Company.
No. 7122.
Court of Appeal of Louisiana, First Circuit.
June 30, 1967.
Rehearing Denied September 27, 1967.
*373 Edward Donald Moseley of Benton & Moseley, Baton Rouge, for appellant.
Robert J. Vandaworker, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
Before LANDRY, ELLIS and BAILES, JJ.
LANDRY, Judge.
This appeal is by plaintiff Blanche Chenevert Picard from the judgment of the trial court rejecting her demand in tort against defendant Southern Farm Bureau Casualty Insurance Company (Southern Farm), the liability insurer of Sidney S. Joffrion, Jr. We find that the trial court properly absolved defendant of liability on the ground its assured was free of negligence proximately causing the accident.
The essential facts of this case are extremely simple and easily narrated. Appellant, guest passenger in a Ford pickup truck operated by Mrs. Betty P. LeJeune, received injuries when her said host was involved in an accident with an automobile owned and being operated by defendant Joffrion. The accident occurred at approximately 8:45 A. M., August 6, 1965, within the municipal limits of the Town of New Roads as Mrs. LeJeune proceeding west on Parent Street (La.Hwy. 1), attempted a left turn into Janis Street and was struck by the oncoming Joffrion vehicle proceeding easterly on Parent Street. The maximum lawful speed in the vicinity of the accident was 40 miles per hour. The point of impact occurred in Joffrion's lane of travel; the right front of the Joffrion vehicle struck the right side of the LeJeune truck at about the time the front wheels of the truck were at or near the southern edge of the paved portion of Parent Street, a two-lane roadway.
Mrs. Picard sustained serious personal injuries as a result of the collision. She settled with the insurer of her host driver reserving all rights against Joffrion and Southern Farm. This action was instituted against Joffrion and his said insurer but subsequently dismissed as to Joffrion leaving Southern Farm as the only defendant before the court.
On this appeal virtually the sole contention of appellant is that Joffrion was guilty of negligence proximately causing the accident in traveling at an excessive speed. This premise is based primarily on two undisputed physical facts, namely: (1) the Joffrion vehicle left aproximately 80 feet of skid marks preceding the point of impact, and (2) the collision resulted in rather extensive damage to both vehicles involved.
The testimony of Mrs. LeJeune is basically that she did not observe the oncoming Joffrion vehicle until after she commenced her left turn and was partially in the left lane. Despite her fleeting glance of the approaching automobile she nevertheless estimated its speed at approximately 65 miles per hour. She maintains she gave a signal of her intention to turn before commencing the maneuver. Plaintiff, Mrs. Picard, sustained an amnesia which virtually blotted out all recollection of the circumstances attending the accident.
Defendant Joffrion testified he was traveling in his proper lane of travel within *374 the legal limit of 40 miles per hour; he estimated his speed at between 35 and 38 miles per hour. As he approached the intersection of Janis Street, he observed the oncoming truck but did not see any turn signal given by Mrs. LeJeune. When he reached a point approximately 80 to 85 feet from the intersection of Janis Street, he noted the LeJeune vehicle commence a left turn without signal. According to Joffrion, he then lightly applied his brakes intending to go to the left of the turning truck but then saw a second oncoming vehicle traveling behind the LeJeune truck in the left or westbound lane. Finding the opposing lane thus closed to him, he then forcefully applied his brakes but was unable to avoid the collision. Joffrion also testified the highway was damp or slightly wet due to a misting rain which prevailed at the time. He recalled it was misting as he was driving with his windshield wiper in operation.
Mrs. Sidney Joffrion, a guest passenger in her husband's automobile, in substance corroborated her spouse's testimony. She was looking ahead just prior to the accident and did not observe any turn signal given by Mrs. LeJeune. She also testified the roadway was wet and slippery at the time and that there was a second oncoming vehicle following behind the LeJeune truck. According to Mrs. Joffrion, the truck abruptly commenced its left turn approximately 85 to 90 feet ahead of her husband's automobile.
F. J. Langlois, Chief of Police, testified in effect that the collision happened in the eastbound lane of Parent Street within the intersection of Janis Street. Chief Langlois noted skid marks left by the Joffrion vehicle entirely within the eastbound lane. By pacing the skid marks he estimated their length at 80 feet overall. Chief Langlois did not recall precisely the weather conditions which prevailed but was of the opinion the highway may have been damp from fog or mist.
Jimmie LeJeune, husband of Betty P. LeJeune, testified he worked in a nearby shop and went immediately to the scene of the accident. After Chief Langlois left the scene, he unassistedly measured the skid marks made by the Joffrion car using a 50 foot tape for the purpose and found they measured 120 feet in length. He maintains he informed Langlois of his measurement and Langlois received the news with indifference. Langlois denied having been given any such information.
Admittedly both vehicles involved received considerable damage as a result of the collision. As previously shown, counsel for appellant pitches this entire appeal on the proposition that the damages to the vehicles and the skid marks left by the Joffrion car are uncontradicted physical facts establishing Joffrion's negligence in proceeding at an excessive rate of speed.
In this connection, relying upon stopping charts found in Blashfield's Encyclopedia of Automobile Law and Practice, Volume 9C, Section 6237, which show that a vehicle traveling 40 miles per hour will leave 71 feet of skid marks, and a chart found in 14 Tulane Law Review at page 503, which shows that a vehicle traveling at said speed will leave 62.7 feet of skid marks under excellent stopping conditions, counsel argues Joffrion is shown to have been exceeding the speed limit as his vehicle left 80 feet of skid marks and still contacted the LeJeune truck with sufficient force to do extensive damage to both vehicles. Counsel for appellant did not offer either chart in evidence.
Counsel for Southern Farm maintains the charts in question should be disregarded under the jurisprudence as established in Guidry v. Grain Dealers Mutual Insurance Company, La.App., 193 So.2d 873, Third Circuit.
The Guidry case, supra, holds, and we believe correctly so, that stopping charts, *375 though works of a scientific or technical nature, should not be considered by the court where they are not introduced in evidence. The Guidry case, supra, as we understand it, goes even further and suggests that when offered in evidence such charts should not be admitted and considered unless accompanied by proof of accuracy.
With this holding we are in complete accord provided objection is made to an offering of such documents unaccompanied by proof of correctness.
We do not agree that Bergeron v. Hetherwick, La.App., 140 So.2d 440, decided by this court in 1962, represents the view that such charts are admissible as independent evidence. In the Bergeron case, supra, at least two such charts were introduced in evidence by appellee without objection. The Blashfield chart, relied upon by present appellant was alluded to by appellant in the Bergeron case, supra. If our decision in the Bergeron case creates the impression we hold such charts admissible as independent evidence, we herewith dispel such idea for all time. We fully share the view of our brothers of the Third Circuit that such charts are objectionable as hearsay and as extra-judicial unsworn statements by persons not available in court for cross-examination. See the Guidry case, supra, and authorities therein cited.
It is a matter of common knowledge that tests upon which such charts are based are conducted under ideal conditions. It is also generally known (as established from the numerous charts themselves) that among such charts there is considerable variance of result.
We believe that when properly admitted in evidence charts of this character can be of some assistance to the court in that they possess probative evidentiary value to be applied in the light of the circumstances of each particular case. For example, the charts, based on ideal conditions as relate to the roadway and condition of the test vehicle, would be of little value in the case at bar considering the evidence herein preponderates to the effect the roadway was at least damp if not wet and slippery. Obviously, tests made on a dry concrete surface cannot control the result in a case involving a wet roadway.
In the case at bar, however, we must completely disregard the stopping tables relied upon by appellant because no attempt was made to offer them in evidence. Such evidence is not, in our view, independently admissible. Guidry v. Grain Dealers, supra.
The evidence of record herein fails to disclose Joffrion's alleged excessive speed by that preponderance of evidence required by law.
That considerable damage resulted to each vehicle notwithstanding the Joffrion car left 80 feet of skid marks prior to the impact is not shown to be incompatible with a speed of 40 miles per hour on a damp or wet roadway. It must be recalled that the LeJeune truck was also in motion at the time of collision. It further appears the Joffrion vehicle traveled a distance of only 9 or 10 feet beyond the point of impact. Considering the evidence in its entirety, we concur in the finding of the trial court that Joffrion was traveling at a safe and lawful speed under the circumstances. He reacted to the emergency as a reasonably prudent driver and was therefore free of negligence proximately causing the accident.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.