SARTAIN, Judge.
This is a suit involving the death of a five year old child (Edith Clay), and personal injuries to John Hart, Jr., four years of age, as a result of the children running into the path of and being struck by an automobile owned and operated by the defendant, Elmo R. Bourg. The trial judge rendered judgment adverse to the plaintiffs from which judgment they now appeal. The trial judge handed down written reasons for judgment which very succinctly state his findings of fact and application of law relative thereto. We quote with approval from these reasons to-wit:
“This action resulted from an accident which occurred in the parish of Terrebonne on the Grand Caillou Road around noon on March 9, 1967.
A Buick automobile driven by Elmo Bourg returned from a settlement known as Dulac where the driver had visited a customer was proceeding north toward the City of Houma. En route he entered a small settlement, locally known as Bobtown, situated about nine miles below Houma, and there struck two children, Edith Clay, five years old and John Hart, Jr., four years old, who were in the act of crossing the road from West to East, returning from a parked ice-cream truck. Edith Clay was killed outright and John Hart, Jr., slightly injured.
Mrs. Eva Celestin and her husband, Austin Clay, Jr., brought this suit for the death of their child Edith Clay. John Hart, Sr. joined in the suit, claiming damages for injuries to his son, John Hart, Jr.; all against Elmo Bourg, his insurer, Travelers Indemnity Company, and Ralph Ellender, operator of the ice-cream truck. Ellender, though served with process, filed no appearance and a preliminary judgment by default was timely entered against him.
The road on which the accident occurred runs along Bayou Grand Caillou and at Bobtown there are houses situated between the highway and the bayou, i. e. west of the highway on the batture, as well as east of the highway.
Several hundred feet before entering Bob-town from the South, as disclosed by photo *859 graphs filed in the record, as well as by testimony, there is a sign designating a 45 m. p. h. speed zone, and then a flashing light. Up to that point the speed limit is 60 m. p. h.
The evidence discloses that at the time of the accident and in the immediate vicinity of the situs, a vehicle described as an ice-cream truck, and belonging to Ralph El-lender, was parked partly on the southbound paved portion of the road and partly on the west shoulder of the road. Behind the ice-cream truck, i. e. to the north of it, was parked another truck belonging to one Bobby Trosclair. According to Kenneth Duplantis, an eye witness to the accident, the Trosclair truck was ‘fifty feet or less’ behind the ice-cream truck, and, according to State Trooper Boudreaux, was on the shoulder of the road and completely off the pavement. Both vehicles were parked facing South or in the direction from which Mr. Bourg was coming.
Resolving some of the conflicts in the testimony of the several witnesses, the court concludes that Bourg’s version of the accident is confirmed in all essentials by the testimony of Kenneth Duplantis, who had been driving behind Bourg at varying distances and witnessed the accident.
The court concludes that Bourg had not exceeded the posted speed limit of 45 miles per hour, after entering the speed zone. The evidence convinces us that Bourg had no way of knowing nor any reason to believe that the first parked vehicle he was approaching was an ice-cream truck — nothing on that part of the truck that was visible to him, the front part, indicated its nature. There was no music coming from the truck, and there were no signs or decals advertising its merchandise except on the sides and back of the truck, which was determined later. Nor was Duplantis aware, before the accident, that the truck sold ice-cream.
The evidence as a whole indicates clearly that no children were visible in the vicinity of the truck.
Mrs. Lucile Trosclair Nixon testified she had been behind the ice-cream truck ‘down in the ditch’ with several small nieces and nephews. The latter left the truck after being served and had been sent ‘back across the street.’ The witness paid the ice-cream man and when she left her nieces and nephews were not in sight. John Hart, Jr. and Edith Clay, having been served last, were still behind the truck when Mrs. Nixon left. She said she was standing at her gate when the accident occurred. She turned when she heard the screeching of tires and then ‘a lick’. She also stated that there were no other children in the area (in the yards) before the accident, though she wasn’t paying much attention. It is noted that this witness’ home is located on the west (bayou) side of the highway. It is also noted that Mrs. Nixon stated ‘we could be seen’, but in light of the surrounding circumstances the court considers that testimony as an unfounded opinion and concludes otherwise.
Reverting to the matter of the speed of the Bourg car, it is noted that John Hart, Sr. estimated the Bourg car was coming at 60 to 65 m. p. h. His testimony then reflected that he had seen the car coming two miles down the road and again at the flashing light (750 feet from the point of impact) which is considerably less than two miles. We believe that at a distance of two miles no accurate estimate of the speed was possible. Considering also that Hart was engaged in conversation with another witness, immediately prior to the accident, and didn’t know his child was across the road at the ice-cream truck, we feel that his estimate of the speed of the Bourg car was made under extreme stress and excitement when he suddenly became aware of the danger to his child. For that reason, among others, we consider it less reliable than that of Duplantis. The only other testimony by plaintiffs’ witnesses regarding speed was that of Mrs. Rosadel Celestin who estimated from her porch that the Bourg car was coming at 65 m. p. h. This witness stated she did not drive. We conclude, under the *860 circumstances that her estimate of Bourg’s speed is no more reliable than that of Hart.
Trooper Ray Boudreaux, the investigating officer, testified that the Bourg car left straight skid marks in Bourg’s traffic lane of 84 feet to which he considered the point of impact, and forty five feet beyond. He assumed the point of impact to be where he found a paper wrapper and some melted ice cream (or popsicle).
In connection with the trooper’s testimony, plaintiffs introduced into evidence, burdened with defendants’ objection, a chart showing distances travelled by vehicles at given speeds during reaction time and during the braking time. Since, in the court’s opinion, there is no valid basis for equating braking distance (resulting from normal application of brakes) and skidding distance (when wheels are obviously locked and previous momentum, weight of the car and road surface conditions have a direct bearing on the skidding distance) we feel that even if otherwise admissible, the chart has no relevancy and we therefore disregard it.
The whole of the testimony reflects that in running out from behind the ice-cream truck, Eva Clay preceded John Hart, Jr. by a few feet. When Bourg first saw them, Eva was crossing in front of him and had almost reached the right or east edge of the pavement. John Hart, Jr. at the same time, was approaching Bourg’s left side.
Whether to swerve either to the right or left or to continue straight ahead were the choices open to Bourg. The evidence indicates that John Hart, Jr. was struck a glancing blow by the left side of Bourg’s car. The testimony also reflects that the boy, seeing the impending danger, had started to back away. The testimony as well as the photographs introduced in evidence show that Bourg remained well within his traffic lane and swerved neither to the right or left. John Hart, Jr. was therefore well over the center line of the road into Bourg’s lane even after he had backed away. When Bourg first saw him he must have been even farther into Bourg’s lane. The girl was near the right (East) edge of the pavement when hit and ended upon the shoulder of the road. Under the stress of the sudden emergency, we cannot say that Bourg failed to exercise good judgment.
Since we find that Bourg was not aware of the presence of children in the vicinity, nor, from surrounding circumstances, that he should have been aware of, or anticipated their presence, the law will not impose on him a greater duty or degree of care than that imposed on a driver under ordinary circumstances in the use of a highway. See Hardy v. Bye, 207 So.2d 198 at p. 201:
We likewise affirm the decision of the district court here and hold in accord with the numerous cases that state the motorist is to be held to a high degree of care when the young children are known to be near the road-side. The motorist is not, however, the insurer of the safety of all children who suddenly dart or run into his path from a concealed position so that the motorist who is driving with all due precaution would be unable to avoid striking the child.’
We find no negligence on the part of defendant Bourg and judgment will be entered dismissing plaintiffs’ suit against Bourg and his insurer, Travelers Indemnity Company.
As above stated, defendant, Ralph Ellender, though served with citation made no appearance herein, and preliminary judgment of default was timely entered against him. On motion of plaintiffs, this trial also constituted a confirmation of default against Ellender. Though the parties declined oral argument and have submitted the matter without briefs, the court assumed from the pleadings that damages are sought against Ellender, on two grounds: Firstly, that his ice cream truck was an attractive nuisance and its owner negligently failed to take such precautions as would prevent injury to children of tender years; secondly, that having parked his truck partly on the highway, *861 in violation of the Louisiana highway traffic regulations, he is prima facie negligent and therefore liable in damages for the injuries.
The first contention, in our opinion, has been set at rest in the cases of Goff v. Carlino, 181 So.2d 426 (Writs refused) and Hardy v. Bye, 207 So.2d 198 (Writs refused). The Goff case is discussed and approved in the Hardy case which states at p. 202:
‘We find no causal link between any alleged negligence or breach of duty on the part of the ice-cream vendor in those circumstances. The attractive nuisance, if the ice-cream truck should be called that, is not only attractive to children who are wont to be indiscreet when the promise of ice-cream is near, but should also indicate to motorists and those other persons responsible for the safety of children, that the children under their care may be exposed to certain danger when they congregate at vending trucks, and they too should take necessary precautions. Therefore, we find the doctrine of attractive nuisance inapplicable to the vendor in a residential neighborhood, and no duty towards the children has been breached by him where there is no evidence of an unreasonable risk of harm which by itself could be considered negligent conduct.’
The second contention has been passed on in the case of Mollier v. American Insurance Group, 158 So.2d 279 (Writs refused) The pertinent facts of that case are distinguishable from those of the instant case only in that the parked truck involved sold crabs instead of ice cream. No action was brought against the driver of the passing automobile which struck a child who ran from behind the truck parked partly on and partly off the pavement. In that regard the court said, at p. 283:
‘Furthermore, even were we to hold otherwise, that is, that the crab truck did constitute an attractive nuisance, the facts disclose that the injuries to young Mol-lier were not caused by his attractive nui-sanee, but was caused by another vehicle which was in no way related to the crab truck.
Nor do we believe that Sabin Breaux was guilty of any act of negligence which constituted a proximate cause of the accident which resulted in young Wayne’s injuries. The petitioner claims that he was negligent first in parking across the highway from the Mollier residence, when he could have driven into the driveway which would have been a safe place. Secondly they claim that he was not parked on the shoulder but was parked in the travel portion of the highway. The record discloses that the crab truck was brought to a halt on its right side of the highway, and regardless of whether or not a portion of the truck might have been on the blacktop, we do not believe that Breaux was guilty of any negligence in bringing his truck to a halt in this position.’
We find no act of negligence on the part of Ellender in the operation or parking of his ice-cream truck which constituted a proximate cause of the accident. The petition against him will be dismissed.” (Emphasis theirs)
The aforementioned findings of fact by the trial judge and his evaluation of and the weight accorded to the testimony of each of the witnesses are amply borne out by the record.
Without belaboring the point we wish to emphasize that these two children’s presence behind the truck was hidden from the oncoming Bourg vehicle. They darted from a position of safety into the path of the Bourg vehicle. Mr. Bourg could do nothing at this time but apply his brakes and endeavor to avoid striking both children. See Duraso v. Barbo, 215 So.2d 908 (1st La.App., 1968, writs refused, 1969) and the cases therein cited.
Counsel for appellants urged in brief and oral argument before us that the *862 speed of the Bourg vehicle was excessive as evidenced by the skid marks left by his vehicle. The stopping charts offered in evidence over the objection of opposing counsel cannot be given the weight urged by counsel because the times and distances, road conditions, weight and other physical characteristics necessary to properly employ such charts were not offered in evidence nor evaluated by an expert for the benefit of the court. Picard v. Joffrión, 202 So. 2d 372 (1st La.App., 1967).
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at appellants’ costs.
Affirmed.