324 So.2d 358 (1975)
STATE of Louisiana
v.
Clyde N. ROGERS.
No. 56631.
Supreme Court of Louisiana.
December 8, 1975.
Rehearing Denied January 16, 1976.
*359 Manuel A. Fernandez, Perez, Fernandez, Seemann & Egan, Chalmette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leander H. Perez, Jr., Dist. Atty., Gilbert V. Andry, III, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant appeals from his conviction for negligent homicide.[1]
On June 19, 1974, at approximately 10:00 o'clock p.m., defendant was traveling on La. Highway 46, a two lane road, through an area commonly known as Pecan Grove. Along this stretch of the highway, oak trees growing at the side of the road form an arch over the highway. Street lights are set back behind the oak trees and provide essentially no illumination. Moonlight does not penetrate the trees. The road is very dark at night, and similar to a tunnel, according to one witness. Despite these conditions at the time of the accident and prior thereto, passing was permitted. The speed limit was 45 miles per hour.
As defendant, traveling east, was attempting to pass a vehicle, he struck and killed a 14 year-old boy who was riding his bicycle in the center of the west bound lane. A companion of the deceased, who was riding his bicycle near the shoulder of the highway, was uninjured. There was evidence that the bicycles were not equipped with lights or reflectors to make them visible in the darkness; further, there was evidence that the boys were *360 wearing dark or non-white clothing. The driver of the vehicle which defendant was attempting to pass at the time of the accident, a Mrs. Nunez, testified that she saw the two boys only when they were illuminated by the headlights of the car approximately two car lengths in front of her.
Mrs. Nunez testified that she was driving about 40 miles per hour, that defendant pulled out to pass and hit the boy when approximately in line with her rear fender, and that his automobile then struck her car on the left front fender. According to Mr. Nunez, who was riding with his wife, defendant's automobile locked front ends with the Nunez vehicle so that defendant had to speed up to free his automobile. Mrs. Nunez testified that she was not aware of any such "mating" of their automobiles, although she did recall that the vehicles made contact. Damage to the Nunez vehicle was minor.
Defendant relies upon five assignments of error in urging reversal of his conviction and sentence. We shall discuss only two of those assignments, one of them just briefly.
At the close of the state's case, defendant moved for a directed verdict of acquittal. He denotes the court's denial of this motion as assignment of error no. 4. The thrust of his motion was that the state's evidence did not prove criminal negligence, or "such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances," the definition of criminal negligence contained in La.R.S. 14:12.
As we view the case, the directed verdict issue is a close one, but considering the evidence produced,[2] we cannot say that the state presented no evidence whatsoever to prove criminal negligence. The motion for directed verdict was therefore properly denied. State v. Douglas, 278 So.2d 485 (La.1973).
We do, however, find merit in defendant's second assignment of error. The trial judge, over a defense objection, qualified a St. Bernard Parish Deputy Sheriff as an expert in "the field of determining speed by skid marks."[3] After being qualified, the Deputy testified, again over objection, that in his opinion defendant's speed at the time of the accident (one which he had not observed) was not less than 75 miles per hour.[4] It is this trial court ruling, allowing the Deputy to testify as an expert and to give opinion testimony as to speed, which we find erroneous.
While R.S. 15:463 generally prohibits opinion testimony, R.S. 15:464 operates as an exception thereto and provides that "[o]n questions involving a knowledge obtained *361 only by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony." R.S. 15:465, a third statute, provides simply that an expert witness "must state the facts upon which his opinion is based." Qualification of a witness as an expert is authorized by R.S. 15:466 which provides: "The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
Determination of the competency of an expert witness is a question of fact and the trial court's ruling should not be disturbed in the absence of manifest error. State v. Vassel, 285 So.2d 221 (La.1973); State v. Washington, 256 La. 233, 236 So.2d 23 (1970); State v. Nicolosi, 228 La. 65, 81 So.2d 771 (1955). These cases note, as does the statute, that the test of the competency of an expert is his Knowledge of the subject. R.S. 15:466.
We must determine in this case whether the trial court erred as a matter of law in accepting this Deputy Sheriff as an expert in the determination of vehicle speed from skid marks.
On direct examination the following facts were elicited: The Deputy had been employed by the St. Bernard Sheriff's department for three years; he had been assigned to accident investigation since May 6, 1974 (the accident occurred on June 19, 1974, trial was held on May 6, 1975); his duties in accident investigation include measuring skid marks and estimating speed; he was trained in making such estimates at the Accident Investigation School conducted at L.S.U.; the method he was taught originated from Northwestern University's Traffic Institute and is generally used throughout the United States; he successfully completed the course conducted at L.S.U.; and he had never before qualified as an expert in a court of law.
On cross-examination, the Deputy Sheriff stated that the Traffic School was held May 6, 1974 through May 17, 1974; that classes were conducted eight hours a day Monday through Friday; that only part of the course concerned speed estimation; that the Traffic School was the only training he had; that the course consisted of lecture and training on the use of a template,[5] plus some practical experience actually measuring and calibrating skid marks; and that he knew of no one who had completed the course who had qualified as an expert.
Upon questioning by the trial judge, the witness explained that in investigating an accident, he measures skid marks, determines the type of surface, and then by use of the template prepared by the Northwestern Traffic Institute, determines the speed of the vehicle. During further questioning by defense counsel, he testified that the "drag factor," one of the variables on the template and one of the two items used to determine speed, contains a margin of error to allow for differences in vehicle weight, condition of tires, and other factors. He admitted that he did not understand the theory behind use of the template, and did not understand how the allegedly built-in margin of error accounted for the differences in vehicle weight (He stated "I don't know how the thing works"). He further admitted that he could not *362 work the mathematical formulas upon which the chart was based because he "didn't go to school for trigonometry," but that he did have a working knowledge of the template.
There is no reported Louisiana criminal decision in which, over objection, an expert has been qualified in speed determination or accident reconstruction. In two cases the issue was noted, but resolution of the issue on the merits was made unnecessary procedurally. In State v. Austin, 282 So.2d 711 (La.1973), a negligent homicide prosecution, an employee of the Shreveport crime lab was qualified, without defense objection, as an expert in "accident reconstruction." This "expert" was allowed to give his opinion as to how the traffic accident occurred. On appeal, this Court stated in a footnote that because of the lack of a defense objection to the expert status afforded the witness, the correctness of that ruling was not before the Court. But we further stated that the opinion was not to be construed as approving of the use of experts to reconstruct accidents and we specifically noted that some jurisdictions refuse to allow such "experts."
In an earlier negligent homicide appeal, State v. Robinson, 223 La. 595, 66 So.2d 515 (1953), this Court on original hearing approved expert testimony by a state trooper with twelve years experience as to his opinion of the speed of the accused's truck. There were no skid marks in that case; the trooper's opinion was based upon the force of the impact and the distance covered by the vehicles after the collision. On rehearing, we found that the trooper had not been offered as or qualified as an expert, and consequently we held that reversible error was committed when the trooper was allowed to give his opinion as to the speed of defendant's truck at the time of the fatal collision.
The fact that there is no reported decision in Louisiana in which, with judicial approval, an expert in determining vehicle speed has been qualified does not militate against the qualification of such an expert. Determination of vehicle speed from skid marks, along with other relevant physical facts and the circumstances of an accident, is apparently a scientifically feasible endeavor which employs principles of physics and mathematics and takes into account mechanical functioning of motor vehicles. An opinion as to vehicle speed can be formulated sufficiently accurately by persons with knowledge obtained by special training or experience to be of assistance at trial. Such persons, adequately versed and furnished necessary relevant data, may after being qualified as experts, express opinions as to the speed of an automobile at the time of a collision even though they have not witnessed the accident. Such persons include law enforcement officers as well as engineers, physicists or other duly qualified witnesses. Annotation, 29 A.L.R.3d 248 (1970).[6]
The only question in this case is whether the Deputy Sheriff was shown to have sufficient knowledge of the area so as to permit him to be qualified as an expert and to state his opinion of the speed of defendant's car at the moment of impact. We believe that he was not shown to be sufficiently knowledgeable by virtue of special training or experience so as to be termed an expert in this area, i.e., speed from skid marks and other relevant data, and that the judge's determination that he was an expert was manifestly erroneous, falling outside of that wide discretion normally permitted in the qualification of experts.
*363 In addition to the very limited training (two weeks of schooling in accident investigation, only a small part of which directed itself to speed calculation and skid marks) and limited experience in measuring skid marks and estimating speed (his two week course of study was just five weeks prior to the accident and approximately one year before he testified), the Deputy involved admitted that he did not understand the theory behind the use of the template and had no comprehension of how the template works,[7] that in effect he simply had been taught how to use the template, which given the necessary input and correct application, purports to express vehicle velocity prior to brake application by tire marks.
The template, presumably containing accurate and reliable scientific correlations, would normally constitute inadmissible hearsay, being extra-judicial, unsworn statements by persons not available for cross-examination. Picard v. Joffrion, 202 So.2d 372 (La.App. 1st Cir. 1967); Gray v. Turner, 245 Miss. 65, 145 So.2d 470 (1962); Hughes v. Vestal, 264 N.C. 500, 142 S.E.2d 361 (1965). Reference to the template and its incorporated mathematical and scientific factors might well be permitted, however, by a duly qualified and actual expert witness who had employed these and other relevant factors in arriving at his opinion as to the speed of the motor vehicle. See 29 A.L.R.3d 253, § 2b. It is entirely another thing, however, for a person without the requisite special knowledge and training to give an "opinion" as to speed when his "opinion" is simply the reading of a template, or chart, "result." The Deputy Sheriff by his own admission was only an "expert" in the use of the chart. The "opinion" which he expressed could hardly be said to be his own.
We conclude therefore that the Deputy Sheriff was not an expert in the field of determining vehicle speed by skid marks, and that the trial court's ruling that he was and his attendant ruling permitting the witness to express his opinion as to defendant's speed just prior to the accident were manifestly erroneous.
We find that the erroneous ruling was not only substantially prejudicial but that, in light of the marginal case otherwise presented by the state, it probably resulted in a miscarriage of justice. C.Cr.P. art. 921.
For the foregoing reasons the defendant's conviction and sentence are reversed and the case remanded.
SANDERS, C.J. and SUMMERS, J., dissent.
NOTES
[1] He was sentenced to five years at hard labor, suspended, and placed on five years active probation. Conditions of the probation are that defendant not operate a motor vehicle during the five year term and that he serve the first weekend of each month in the parish jail during the first year of his sentence.
[2] Although the earlier recitation of facts in this opinion accurately depicts the facts surrounding occurrence of the accident, the evidence before the trial court most helpful to the state's case included the testimony of a St. Bernard Parish Deputy Sheriff who, after being qualified as an expert, opined that defendant was driving at a minimum speed of 75 miles per hour (this testimony is discussed more fully hereinafter), and the testimony of a witness that some 3 minutes before and 2½ miles from the scene of the accident, he observed a white and red Challenger automobile being driven in a reckless manner, passing on a curve and thereby almost causing a head-on collision, and continuing to wind in and out, passing other vehicles. Defendant's automobile was a black and red Challenger, but the witness testified that the automobile he saw weaving in traffic was the same vehicle he later saw on the side of the road at the accident scene in Pecan Grove.
[3] This area of expertise is referred to as "Determination of vehicle velocity prior to brake application by tire marks." White, Tire Dynamics (Motor Vehicle Research, Inc. 1956).
[4] The Deputy arrived at the scene of the accident within minutes after it occurred. His expert opinion is based upon skid marks, totaling 160 feet prior to the ostensible point of impact and 272 feet thereafter, which he measured that night. He also looked at the tires on defendant's automobile and noted that the highway was free from obvious debris such as gravel or shells.
[5] The template, actually a traffic template and calculator, is a plastic, rule-type overlay, somewhat like a protractor, with various calibrations, including braking distance in feet, speed in miles per hour/feet per second, and drag factor expressed as a co-efficient of friction corresponding to various types of road surfaces. It apparently can be used to prepare scale maps of accident situations, to show positions of vehicles, to calculate speed through skidding distances, to estimate stopping and acceleration distances, to convert miles per hour to feet per second and vice versa, to get squares and square roots of numbers, and to measure angles and grades.
[6] The expert witness interpretating skid marks is concerned with: (1) the Laws of Motion; (2) The Law of Conservation of Energy; and (3) Coulomb's Law of Friction or the Coefficient of Friction. Cook, Speed Calculations and the Expert Witness, 42 Neb.L.Rev. 100, 106. These laws apparently make possible the correlation of skid marks and approximate speed. These scientific principles are taken into account and presumably underlie the template's calibrated scales.
[7] The Deputy testified that the following factors would have no effect upon his determination of velocity: the weight of the vehicle; the fact that there was a second collision with another vehicle after the bicycle was struck; the fact that defendant's car may have mated with the Nunez car; the width, temperature, tread design and inflation of the tires; the mechanical condition of the autobile,

He stated that the condition of the tires would affect stopping distance but that this variable is taken into account in the margin of error built into the charts on the template.
He had not read any scholarly works or treatises on speed estimation. He was not familiar with the term co-efficient of friction, but imagined (properly) that it was the drag factor.