353 So.2d 1282 (1977)
STATE of Louisiana
v.
Gilbert Ray SELF.
No. 59400.
Supreme Court of Louisiana.
September 19, 1977.
Rehearings Denied October 21, 1977.
Dissenting Opinion January 30, 1978.
Henry C. Gahagan, Jr., Gahagan & Gahagan, Natchitoches, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., E. L. Edwards, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant, Gilbert Ray Self, was convicted in a judge trial of negligent homicide, La.R.S. 14:32, and sentenced to three years imprisonment at hard labor. His sentence was suspended, but he was required to serve one year in jail as a condition of probation.
On December 4, 1975, two automobiles collided head-on in the north-bound lane of U.S. Highway 171 about one-tenth of a mile *1283 south of Many, Louisiana. Sergeant C. J. Miller of the Louisiana State Police, who was driving a 1974 Chevrolet State Police vehicle in a northerly direction, was killed in the accident. The defendant, Gilbert Ray Self, was driving southward in a 1969 Chevelle Malibu which crossed the highway dividing line causing the fatal mishap. A passenger riding with Miller testified that the police vehicle was traveling about fifty miles per hour before the accident. According to three physicians, the defendant suffered from amnesia resulting from the accident and could not remember anything about the collision.
In endeavoring to meet its burden of proving beyond a reasonable doubt that defendant's conduct was "a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances," La.R.S. 14:12, the State tendered a state police officer as an expert in the field of determining the speed of motor vehicles involved in collisions. The officer had investigated over nine hundred auto accidents and had attended two traffic investigation schools where he learned to calculate vehicular speed by use of a template or nomograph and the mathematical formulae upon which this device is based. At one of the schools he observed an experiment in which an automobile was propelled against a cement barrier at a predetermined speed. However, the witness admitted that he was not an expert at estimating the speed of vehicles from collision damage, and he conceded that he did not understand the derivation of the speed calculation formulae upon which the template is based. Nevertheless, the court, over defendant's objection, qualified the officer as an expert for the purposes tendered.
After being, qualified, the officer testified, over a defense objection, that in his opinion the combined speed of both vehicles was 65 to 70 miles per hour at the moment of impact. He further testified that during pre-collision skidding defendant's vehicle lost 32 miles per hour, and the police car lost 39 miles per hour in speed. These opinions were based upon three factors: experiments conducted by the officer under circumstances somewhat similar to those surrounding the accident from which he derived a "coefficient of friction" for each vehicle; his calculations with a template, using skid mark lengths and coefficients of friction, of the "speed lost" by each vehicle during skidding before impact; and his estimation of the combined speed of the vehicles at the moment of impact based upon his visual inspection of the damages sustained.
La.R.S. 15:466 provides:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
Determination of the competency of an expert witness is a question of fact and the trial court's ruling should not be disturbed in the absence of manifest error. State v. Rogers, 324 So.2d 358 (La.1976).
In the Rogers case we held that it was manifest error for the trial court to qualify as an expert in determining speed by use of a template a witness who had only superficial knowledge of how the template works and no comprehension of the theory behind its use, and who had simply been taught how to use the template, which given the necessary input and correct application, purports to express minimum vehicle velocity prior to skidding caused by brake application. Although the state police officer in the instant case certainly had superior credentials in terms of schooling and experience, it is apparent from his testimony, as he freely admitted, that his knowledge of the template and the scientific correlations it expresses was equally as superficial as that of the Rogers case witness.
This alone clearly indicates the witness lacked sufficient knowledge to qualify as an expert in speed calculations. There are other reasons, however, why the trial court should not have found the witness competent to testify upon the subject. The reasons should be expressed, since the instant *1284 case may be retried, and also because these reasons point up some of the causes of our distrust of vehicular speed determination evidence in criminal cases, except when given by very knowledgeable experts.
The template, like the slide rule, is no more reliable than the expert who uses it and no more accurate than the data used in his calculations. Many scholars of both instruments can be taught to perform basic calculations accurately and to solve satisfactorily simple hypothetical problems. However, when it comes to gathering data and correctly determining, after the fact, the speed of vehicles prior to real accidents, a great deal more expertise may be required.
The template or nomograph has the form of an alignment chart and has been devised for use in finding the speed of a vehicle, if the skid mark distance, grade of the incline, and average coefficient of friction are known. When the distance skidded is aligned with the coefficient of friction, the template will indicate its manufacturer's computation of the minimum speed at which the vehicle was traveling.
The coefficient of friction, or drag factor, is an experimental variable. According to one expert in the field, it can be found properly by conducting several braking experiments with a vehicle of comparable weight on a similar surface, and at the approximate speed of the vehicle referred to in the court testimony. Cook,[*] Speed Calculations and the Expert Witness, 42 Neb.L.Rev. 100, 114 (1963). Although the State's witness in the present case attempted to use this procedure, he did not state how many tests were conducted or whether the drag factor used was derived from more than one experiment with a vehicle of comparable weight. Moreover, since the speed of defendant's vehicle before the accident was unknown, it appears that it would have been preferable to run tests at several different speeds in order to arrive at reliable coefficients of friction. Id. at p. 115. The State's witness further testified that it was unnecessary to make any adjustment of the coefficient of friction factor because the experiment surface was inclined. Another expert, however, appears to be of the opinion that allowance for slope influence is essential to accurate calculation of speed. Id. at p. 115. If the prosecution witness used improper procedures in these respects there is a significant risk that the coefficient of friction crucial to all his calculations was incorrect.
The trial court clearly erred in accepting the State's witness as an expert in estimating automobile speed based on the amount of vehicle damage. Not only was the witness qualified over his own protest, but his experience in observing such damages under controlled conditions and at a known speed appears to have been limited to one instance.
The most disturbing aspect of this case, however, is the possibility that the State witness' simple combination of two different speed calculation methods may have caused the trier of fact to draw an erroneous inference as to the defendant's speed before the accident. Since Sergeant Miller's passenger testified the patrol car's speed before the accident was 50 miles per hour, and the State's expert testified it lost 39 miles per hour before impact, the trier of fact was invited to conclude that the police vehicle was going 11 miles per hour at the time of impact. From this it would have been logical to deduce that the defendant was driving 86-91 miles per hour just prior to the accident by subtracting the patrol car's speed from the two vehicles' estimated combined speed of 65 to 70 miles per hour at the point of collision and by adding the 32 miles per hour of speed calculated to have been lost by the defendant's car before the collision.
At least one recognized expert observes that such a rationale will produce an exaggerated estimate of vehicular speed. Professor Cook states:

*1285 "Another possible source of error in using a speed-skid mark calculator lies in improper application to a vehicle which does not come to a full stop. The charts are prepared with a full stop assumed, and therefore should not be used in any other condition, except to indicate that the vehicle must have been traveling above a certain minimum speed. Even then, any statement made might be misleading, as will be illustrated by the following example. Let us assume that an auto were to skid seventy feet on a surface having a coefficient of friction of 0.6, and then strike a parked vehicle, doing appreciable damage. This damage we will estimate, for the purpose of illustration, as being due to a collision speed of twenty miles per hour. Now we shall apply the skid mark chart to the moving auto, obtaining a speed of at least 35 miles per hour. Misleading information might be conveyed here, because a jury would very likely add the estimated impact damage speed of twenty miles per hour to the skid mark chart indicated speed of 35 miles per hour, and conclude that the initial speed of the auto was fifty five miles per hour. A correct solution of this type of problem entails a direct application of the general equation of Conservation of Energy, without resorting to speed-skid mark charts. By applying the Law of Conservation of Energy the correct speed would be forty miles per hour, a difference of fifteen miles per hour." Id. at p. 123.
If Professor Cook's view represents a sound application of the fundamental physical laws which apply to the motion of automobiles, the expert testimony in the instant case probably hindered rather than aided the trier of fact in reaching a correct decision as to the defendant's speed. Even under Dean Wigmore's permissive view that the only true criterion of an expert's competency to testify should be whether the evidence he gives will help the judge or jury in reaching a decision the State's speed calculation witness would not have been qualified to give evidence on this subject. 7 Wigmore, Evidence § 1923 at 21 (3d ed. 1940).
In view of the foregoing, we find that the trial judge erroneously qualified this witness as an expert, and improperly allowed him to express opinion testimony. We further find that the improper admission of this testimony, supporting as it does an inference that defendant was driving his car at a highly excessive rate of speed immediately prior to the accident, amounted to a substantial violation of defendant's statutory rights, and constituted reversible error. La.C.Cr.P. art. 921.
Accordingly, the defendant's conviction is reversed, his sentence is set aside, and the case is remanded to the district court for a new trial.

* * *
SANDERS, C. J., dissents.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents.
SUMMERS, Justice (dissenting).
Speed was not an essential ingredient of the charge of negligent homicide in this case. Crossing over into the opposite lane of travel, however, was a crucial fact in the State's case. La.Rev.Stat. 14:32; La.Rev. Stat. 32:77. Defendant's car did cross over into the opposite lane of travel and collide with decedent Miller's patrol car contrary to a statutory prohibition, thereby establishing presumptive evidence of negligence. Physical facts at the scene and the law made this much uncontroverted.
Surely the state police officer who had investigated over nine hundred auto accidents and who had attended two traffic investigation schools was qualified to give his estimate of the speed at which these vehicles were traveling. He could base this upon the physical facts available at the site after the accident and his prior experience in these matters. The fact that he used the template and based his estimate of speed on that calculation also was a matter going to the weight of the evidence to be judged by the trier of fact, not a question of admissibility.
*1286 Several other witnesses, including eye witnesses, testified to facts fully corroborating the State's position in this prosecution.
In my view the Court has unnecessarily reversed this conviction on the issue of defendant's negligence by finding the state police officer's testimony to be inadmissible.
I respectfully dissent.
NOTES
[*] Cook, David L., B.S. 1942, M.A. 1950, University of Nebraska; Member, Engineers Club of Lincoln, Nebraska Engineering Society, American Society for Engineering Education. Associate Professor of Engineering Mechanics, University of Nebraska.