McDonald, j.
 

 |2The defendant, Stephen H. McMillan, was charged by bill of information with one count of vehicular homicide, a violation of La. R.S. 14:32.1(A)(1)
 
 &
 
 (2), and pled not guilty. Following a jury trial, he was found guilty as charged. He was fined $15,000, and sentenced to twenty-five years at hard labor, with twenty years of the sentence without benefit of probation, parole, or suspension of sentence.
 
 [1]
 
 He moved for reconsideration of sentence, but the motion was denied. He now appeals, designating the following assignments of error:
 

 1. The record allows a definitive determination that the defendant’s trial counsel rendered ineffective assistance, in that he (1) failed to object to the State’s key opinion witnesses, who provided the only evidence that the defendant was at fault in the fatal accident; (2) failed (according to the trial court) to lay a proper foundation for his own key exculpatory witness, whose testimony was largely excluded; and (3) failed to offer the testimony of a qualified accident re-constructionist, which the record shows, would probably have exculpated the defendant.
 

 2. The trial court abused its discretion and committed prejudicial legal error in excluding the reliable and highly relevant testimony of the key witness the defendant’s counsel did offer.
 

 3. The trial court committed legal error in sentencing by failing to weigh the aggravating and mitigating factors in accordance with La.Code Crim. P. art. 894.1.
 

 |s4. A twenty-five year sentence for vehicular homicide with one victim, no pri- or felonies, and almost no La.Code Crim. P. art. 894.1 aggravating circumstances, is grossly disproportionate and unconstitutionally excessive. For the following reasons, we affirm the conviction and sentence.
 

 
 *301
 

 FACTS
 

 On the night of January 17, 2007, Amber Pike Foreman, the victim, died as a result of blunt trauma from a motor vehicle accident on La. Highway 16 in St. Helena Parish. She suffered a large laceration to her forehead, a laceration to her left arm, a laceration to her right leg, and multiple rib fractures. At the time of her death, she was married and had two sons, ages one and eight. She was a teacher at Park Forest Middle School in Baton Rouge.
 

 Louisiana State Police Trooper William D. Parson was dispatched to the scene of the accident at 12:45 a.m. Upon arriving at the scene, Louisiana State Police procedure required that Trooper Parson first make sure that any injured people were treated and then map out the physical evidence and determine the point of impact. Two vehicles had been involved in the accident- — a Saturn car driven by the victim in the westbound lane, and a three-quarter-ton Dodge pickup truck, registered to the defendant, driven in the eastbound lane.
 

 Trooper Parson first spoke to the defendant approximately two or three hours after the accident. The defendant initially denied driving the Dodge, but subsequently admitted he was the driver. Trooper Parson smelled alcohol on the defendant’s breath. Thereafter, the defendant began, but refused to complete, field sobriety tests. He claimed he had hit the Saturn' because it was across the road, facing south. Trooper Parson asked the defendant if he was sure the Saturn had been facing south, and the defendant stated he was sure. At 4:14 a.m., the | defendant submitted to a breathalyzer test, which indicated his blood-alcohol level was .147.
 

 Trooper Parson believed that the physical evidence of the crash scene and the marks on the road were inconsistent with the Saturn facing south at the time of the collision. The preponderance of the debris was located in the westbound lane. There were also fresh gouge and scrape marks near the fog line in the westbound lane. Trooper Parson indicated that when vehicles collide, they have a tendency to bow down and hit the roadway, leaving gouge marks as they moved. According to Trooper Parson, the victim’s vehicle could not have been across the road facing south at the time of the collision because, in that case, the vehicle would have been damaged on the right passenger side, but the vehicle had been sheered on its left driver side. He indicated that, even if the defendant had confused north and south, the damage to his vehicle, which was on the left-front side, did not indicate that the collision occurred with the victim’s vehicle across the highway. If the collision had occurred with the victim’s vehicle across the highway, the damage to the defendant’s vehicle would have been across the entire front of his vehicle.
 

 Trooper Parson’s investigation indicated that the Dodge crossed the centerline into the victim’s lane of travel, and she attempted to turn away toward the westbound shoulder at the last second, but was impacted near the driver’s-side door, with the Dodge digging into the left-rear compartment of the Saturn, causing the Dodge to spin around.
 

 George Ache testified that in January of 2007, he was leaving a gas station on the north side of La. Highway 16 in St. Helena Parish when a Dodge or Chevy truck passed him, headed east, at “a high rate of speed.” Ache looked to his left (down the eastbound lane) and saw the truck swerving, go off the road, come back onto the | ¡¡road, overcorrecting, and then go down into a “small dip in the road.” He described what happened next as “boom, dust, lights, spinning, all of that.” He indicated that the gas station was approxi
 
 *302
 
 mately three hundred feet from the crash scene.
 

 Louisiana State Trooper Lieutenant Robert M. Mills investigated the accident scene one week after the accident. He determined that the collision had not been a full-frontal collision or a full-impact collision. On the basis of “before or after collision marks,” five to seven feet in the westbound lane, he determined that the point-of-impact had been in the westbound lane. Trooper Mills did not attempt to estimate the speeds of the Saturn and Dodge at the time of collision, and indicated the speeds of the vehicles would not have changed his opinion of how the accident happened. According to Trooper Mills, the Dodge hit the Saturn behind the driver’s-side door, encroaching into the vehicle between one-and-one-half feet to two- and-one-half feet, rotating the vehicles into each other, and then separated from the Saturn.
 

 The defendant claimed that during the early hours of January 18, 2007, he pulled out of the End-of-the-Line store after purchasing some Copenhagen tobacco and drove down the road. He claimed that when he looked up, there was a car in his lane, and he hit the vehicle. He conceded that he had been to Smoking Joe’s bar earlier that evening, and claimed that he drank five beers. He claimed he arrived at the bar at approximately 10:30 p.m.
 

 INEFFECTIVE ASSISTANCE OF COUNSEL
 

 In assignment of error number one, the defendant argues that his trial defense counsel rendered ineffective assistance, because he failed to object to the testimony of Trooper Parson, which he claims was prohibited under
 
 State v. Self,
 
 353 So.2d 1282 (La.1977), and
 
 State v. Rogers,
 
 324 So.2d 358 (La.1975). He 1fialso argues that trial defense counsel rendered ineffective assistance, because he failed to object to the testimony of Trooper Mills, arguing that Trooper Mills failed to take into account the objective data from the “black box” of the victim’s car. He also argues that trial defense counsel rendered ineffective assistance, because he failed to lay a proper foundation for the testimony of John Sledge. Lastly, he argues that trial defense counsel rendered ineffective assistance, because he failed to present testimony from an accident reconstructionist.
 

 A claim of ineffective assistance of counsel is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal.
 
 State v. Miller,
 
 99-0192, p. 24 (La.9/6/00), 776 So.2d 396, 411,
 
 cert. denied,
 
 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001). A claim of ineffectiveness of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney’s performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that the defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that, but for the counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel’s
 
 *303
 
 performance and prejudice to the defendant if the defendant makes an 17inadequate showing on one of the components.
 
 State v. Serigny,
 
 610 So.2d 857, 859-60 (La.App. 1st Cir.1992),
 
 writ denied,
 
 614 So.2d 1263 (La.1993).
 

 TROOPER PARSON
 

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. La.Code Evid. art. 702.
 

 Self
 

 [2]
 

 involved an appeal from a conviction for negligent homicide (the killing of a human being by criminal negligence), a violation of La. R.S. 14:32, following a head-on collision after a vehicle driven by the defendant crossed the highway dividing line and struck a vehicle driven by Sergeant C.J. Miller of the Louisiana State Police.
 
 Self,
 
 353 So.2d at 1282-83. In an effort to prove beyond a reasonable doubt that the defendant’s conduct was a “gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances,”
 
 [3]
 
 the State tendered a state police officer as an expert in the field of determining the speed of motor vehicles involved in collisions, and the court allowed him to testify in that capacity over defense objection.
 
 Self,
 
 353 So.2d at 1283. The officer had learned to calculate vehicular speed by use of a template or nomograph.
 
 Id.
 
 He conceded, however, that he was not an expert at estimating the speed of vehicles from collision damage and that he did not understand the derivation of the speed calculation formulae upon which the template was based. |
 
 fId.
 
 The court in
 
 Self,
 
 referencing its decision in
 
 Rogers
 
 (also a negligent homicide case), noted:
 

 In the
 
 Rogers
 
 case we held that it was manifest error for the trial court to qualify as an expert in determining speed by use of a template a witness who had only superficial knowledge of how the template works and no comprehension of the theory behind its use, and who had simply been taught how to use the template, which given the necessary input and correct application, purports to express minimum vehicle velocity prior to skidding caused by brake application. Although the state police officer in the instant case certainly had superior credentials in terms of schooling and experience, it is apparent from his testimony, as he freely admitted, that his knowledge of the template and the scientific correlations it expresses was equally as superficial as that of the
 
 Rogers
 
 case witness.
 

 Self,
 
 353 So.2d at 1283.
 

 The court in
 
 Self
 
 found that the officer lacked sufficient knowledge to qualify as an expert in speed calculations; that the trial court had erroneously qualified him as an expert; that the trial court had improperly allowed him to express opinion testimony; and that the improper admission of the testimony, which supported an inference that the defendant was driving at an excessive rate of speed immediately prior to the accident, amounted to a substantial violation of the defendant’s statutory rights, and constituted reversible error.
 
 Self,
 
 353 So.2d at 1283 and 1285.
 

 Self
 
 and
 
 Rogers
 
 are distinguishable from the instant case. In those cases, the expert testimony on the issue of speed was critical
 
 *304
 
 to the State’s burden. In this case, however, criminal negligence was not an element of the offense. Indeed, Trooper Parson specifically testified that he was not an expert on gauging speeds. The key issue in this case was whether the killing of the victim was caused proximately or caused directly by the defendant’s operation of his vehicle while 19intoxicated.
 
 [4]
 
 The State tendered Trooper Parson as an expert in the field of automobile crash investigations. He had received approximately four weeks of training in crash investigation at the police academy. He also had an undergraduate degree in aerodynamics and had taken physics courses in high school and college. He had nine years of experience as a State policeman and had investigated hundreds of crashes, including at least sixteen fatalities. His work was reviewed by a sergeant and a shift lieutenant, each of whom had twelve to twenty-five years experience. He had never qualified as an expert, but he had also never been offered as an expert. Trial defense counsel did not perform deficiently in failing to object, under
 
 Self
 
 and
 
 Rogers,
 
 to Trooper Parson being offered as an expert in the field of automobile crash investigations.
 

 This portion of assignment of error number one is without merit.
 

 TROOPER MILLS
 

 The defendant also argues that trial defense counsel rendered ineffective assistance by failing to object to Trooper Mills on the basis that he had failed to take into account the objective data from the “black box” of the victim’s car. The defendant claims that “the objective data from the air bag control module, or ‘black box,’ indicates the deceased’s vehicle was almost motionless at the time of the collision, thus suggesting that the deceased was engaged in some kind of turning maneuver which put her into [the defendant’s] lane.”
 

 The State tendered Trooper Mills as an expert in the field of accident reconstruction and investigation. He had been a Louisiana State Trooper for fifteen-and-one-half years. He had received training in accident reconstruction and investigation. He had attended and successfully completed an eighty-hour | incourse on basic traffic accident investigation, as well as courses on accident investigation focusing on tires, vehicle dynamics, traffic accident reconstruction, and traffic reconstruction focusing on motorcycles and 18-wheelers. He had also reconstructed accidents while working as a State Trooper. He had never been qualified as an expert in court, but he had also never been denied qualification as an expert in court. Trial defense counsel accepted Trooper Mills as an expert in the field tendered. Thereafter, on cross-examination, Trooper Mills indicated he had not checked the victim’s vehicle to see if it contained an air bag control module and he was not certified to download such a device.
 

 Initially, we note that the fact that the victim may have slowed her vehicle prior to the defendant colliding with her does not prove that she turned in front of the defendant. Trooper Parson testified that the victim may have seen the defendant’s vehicle coming toward her, possibly weaving, and slowed because she did not know what to do and then turned away immediately prior to the crash in an effort to avoid the collision. Thus, the fact that the victim may have slowed her vehicle prior to the accident was not necessarily helpful to the defense. Further, the fact that Trooper Mills had not examined the “black box” in the victim’s vehicle did not prevent him from being an expert in the field of accident reconstruction and investigation.
 
 *305
 
 Accordingly, trial defense counsel did not perform deficiently in failing to object to Trooper Mills being offered as an expert in the field of accident reconstruction and investigation.
 

 This portion of assignment of error number one is without merit.
 

 JOHN SLEDGE
 

 The defendant also argues that trial defense counsel rendered ineffective assistance because he failed to lay a proper foundation for the testimony of John _JjjSledge. The defendant claims in his brief that “[l]ater, proffered testimony strongly suggests that testimony based on the objective data from the ‘black box’ would have had a huge impact on the jury.”
 

 At trial, the defense presented testimony from John Sledge. Sledge was a service and parts manager for a Subaru dealership. He indicated he was also certified as a crash data retrieval specialist by the collision safety institute. He indicated that a car’s air bag control module constantly recorded information from other modules in the car and, on General Motors vehicles, after the air bags deployed, the module would go back approximately five seconds and record vehicle speed, engine speed, throttle position, brake switch activation, and whether the occupants were wearing seatbelts. He indicated that the victim’s vehicle had an air bag control module. However, when asked if he had received the device to examine and to use to make his report, he indicated he had received a “download report” from the device.
 

 On cross-examination, Sledge conceded he had no training in physics and had not taken any classes in accident reconstruction. He also conceded that his certificate was issued in 2003 and the victim’s vehicle was a 2005 model, but claimed that his certificate was still valid. He restated that he had not downloaded the data from the victim’s vehicle’s air bag control module, but claimed that the data would not have been different had he personally downloaded it from the module. The State objected to Sledge testifying, arguing that the report was hearsay and objected to him being accepted as an expert. The court accepted Sledge as a crash data retrieval specialist.
 

 On redirect examination, Sledge indicated that the air bag control module had been sent out-of-state to Logan Diagnostics, L.L.C., and he had interpreted the 11 .¿information after receiving an email of the report they obtained from the module. The trial court sustained the hearsay objection.
 

 In a side-bar conference, the court stated:
 

 The court has just ruled on an objection by this witness, who has been recognized specifically as a crash data retrieval specialist. The defense is attempting to get in a report. Let me just get more basic. This module was taken out of the vehicle, the automobile involved in this crash and sent off out of state. A report was generated. The court is fully aware that according to this witness’s testimony, the data is burned into it. This -witness is asserting that the VIN numbers are all the same, but the actual operation was conducted by persons unknown in some state other than Louisiana at some point in time.
 

 To this court’s understanding and appreciation, that introduction of the — either the results itself or the report itself or the specific words on the report would be rank hearsay. For whatever it’s worth, I would — if he had downloaded it into a computer, I wouldn’t have a problem with it. And I trust that the
 
 *306
 
 information would be the same, but it is to my way of thinking rank hearsay.
 

 I was — want to point out in arguing the hearsay objection, defense counsel had relayed or somehow indicated to the court that he was going to ask this witness to interpret the report as to what the vehicle had been doing. And to my way of thinking, that would be— and I didn’t say it — I didn’t want to say too much in front of [the] jury — but that would be getting into accident reconstruction. He would say the engine was turning over and whatever else is recorded, he would be saying it’s being recorded, but he couldn’t say what you had suggested he was going to say.
 

 The defense objected to the court’s ruling, arguing that once Sledge was qualified as an expert, he could use information from whatever source to render an opinion. The State pointed out that under La.Code Evid. art. 705(B), inadmissible evidence could only be referenced by an expert on cross-examination.
 

 The defendant fails to prove that the deficient performance, if any, in failing to lay a proper foundation for the testimony of John Sledge, prejudiced the defense. According to the proffered testimony, the ‘black box’ data would have established that the victim’s vehicle was travelling at zero miles per hour, five | ^seconds before the collision. This evidence did nothing, however, to counter the fact that the defendant’s blood-alcohol level four hours after the collision was .147, that the physical evidence indicated that the collision occurred in the victim’s lane, and that the defendant crossed into that lane one to three feet prior to the collision. Even if this evidence had been presented, it would have had no bearing on the case. The relevant elements of vehicular homicide are whether the killing was caused proximately or directly by the operator of the vehicle who was either under the influence of alcoholic beverages or had a blood-alcohol concentration of 0.08 percent or more. Whether the victim’s vehicle was moving or not would not change the relevant evidence of the defendant’s guilt in directly or proximately causing the death of the victim.
 

 This portion of assignment of error number one is without merit.
 

 FAILURE TO PRESENT TESTIMONY FROM AN ACCIDENT RECONSTRUC-TIONIST
 

 The defendant also argues trial counsel rendered ineffective assistance, because he failed to present testimony from an accident reconstructionist. Approximately ten months after the conviction, the defense moved for a new trial on the basis of new and material evidence.
 
 [5]
 
 The motion was denied. At the hearing on the motion, the defense proffered testimony from Kelley Adamson. Adamson indicated he had a bachelor’s degree and a master’s degree in civil engineering, was a licensed professional engineer in Louisiana, Mississippi, and Texas, and had qualified as an expert in the field of accident reconstruction approximately fifty times. Adamson claimed that he had “determined effectively” |14that the victim’s vehicle was across the roadway at the time of the collision, that the defendant’s vehicle crossed the centerline, and that the victim’s vehicle was travelling at zero miles per hour five seconds before the collision. He claimed that the victim’s vehicle’s speed was consistent with her making “some kind of a U-turn type of maneuver[,]” and her being across the roadway was consistent with and agreeable to the SDM data that she was making a U-turn. On cross-examina
 
 *307
 
 tion, Adamson conceded that there was evidence that the collision occurred in the westbound lane and that the defendant had crossed the centerline at least by one foot, and possibly by as much as three feet, at the time of the collision. He argues that examination of the proffered testimony establishes that a qualified accident re-constructionist testifying at trial on behalf of the defendant would have made a “huge difference” in the case.
 

 The decision of which witnesses to present at trial, if any, was a strategy decision. Allegations of ineffectiveness relating to the choice made by counsel to pursue one line of defense as opposed to another constitute an attack upon a strategy decision made by trial counsel.
 
 State v. Allen,
 
 94-1941, p. 8 (La.App. 1st Cir.11/9/95), 664 So.2d 1264, 1271,
 
 writ denied,
 
 95-2946 (La.3/15/96), 669 So.2d 433. The investigation of strategy decisions requires an evidentiary hearing
 
 [6]
 
 and, therefore, cannot possibly be reviewed on appeal. Further, under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial rest with an accused and his attorney. The fact that a particular strategy is I ,.^unsuccessful does not establish ineffective assistance of counsel.
 
 State v. Folse,
 
 623 So.2d 59, 71 (La.App. 1st Cir.1993).
 

 This portion of assignment of error number one is without merit or otherwise not subject to appellate review.
 

 ADMISSIBILITY OF SLEDGE’S TESTIMONY ON “BLACK BOX” DATA
 

 In assignment of error number two, the defendant argues that the trial court erred in sustaining the hearsay objection against John Sledge, because his testimony was admissible under La.Code Evid. art. 703, under
 
 State v. Armstead,
 
 432 So.2d 837, 838-40 (La.1983) (telephone company records generated solely by the electrical and mechanical operations of the computer and telephone equipment and not dependent upon the observations and reporting of a human declarant are not hearsay), or under the defendant’s constitutional right to present a defense.
 

 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. La.Code Evid. art. 703.
 

 In a criminal case, every expert witness must state the facts upon which his opinion is based, provided, however, that with respect to evidence which would otherwise be inadmissible, such basis shall only be elicited on cross-examination. La.Code Evid. art. 705(B).
 

 The defense qualified Sledge as a crash data retrieval specialist, but he conceded he had not in fact retrieved the data from the module in the victim’s car. Accordingly, Sledge was not permitted, on direct examination, to restate facts or 1 u;data obtained by Logan Diagnostics, L.L.C.
 
 See
 
 La.Code Evid. art. 705(B);
 
 State v. Langley,
 
 95-1489, p. 13 (La.4/14/98), 711 So.2d 651, 662-63.
 

 “A criminal defendant has the constitutional right to present a defense.” U.S. Const. Amend. VI; La. Const. Art. I, § 16;
 
 Washington v. Texas,
 
 388 U.S. 14,
 
 *308
 
 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967);
 
 State v. Van Winkle,
 
 94-0947, p. 5 (La.6/30/95), 658 So.2d 198, 201. “It is difficult to imagine rights more inextricably linked to our concept of a fair trial [than the right to present a defense].”
 
 Van Winkle,
 
 94-0947 at p. 5, 658 So.2d at 202. Evidentiary rules may not supersede a defendant’s fundamental right to present a defense.
 
 Id,; State v. Thompson,
 
 2008-0874, p. 4 (La.App. 4 Cir. 4/8/09), 10 So.3d 851, 853,
 
 writ denied,
 
 2009-1044 (La.1/29/10), 25 So.3d 827.
 

 Nevertheless, confrontation errors are subject to harmless error analysis.
 
 Thompson,
 
 2008-0874, at p.4, 10 So.3d at 853, citing
 
 State v. Broadway,
 
 96-2659, p. 24 (La.10/19/99), 753 So.2d 801, 817, cert.
 
 denied,
 
 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000). In a harmless error review, “ ‘the question is not whether, in a trial that occurred without error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in
 
 this
 
 trial was surely unattributable to the error.’
 
 State v. Vance,
 
 2003-1946, p. 10 (La.App. 4 Cir. 6/30/04), 879 So.2d 862, 869,
 
 writ denied,
 
 2006-1071 (La.11/9/06), 941 So.2d 34, citing.”
 
 State v. Truvia,
 
 2009-0504, (La.App. 4 Cir. 1/13/10), 29 So.3d 669, 678. A crash data retrieval specialist would, arguably, not only be qualified to retrieve the data from the computer module, but also to interpret it. Since Sledge was qualified as an expert in crash data retrieval, it was error for the trial court to disallow his testimony concerning the report prepared by Logan Diagnostics, L.L.C. As previously noted, however, even if this evidence had been presented indicating |17the victim’s vehicle was stopped at the time of the collision, it would have had no bearing on the issue of guilt, and the guilty verdict cannot be attributable to this error.
 

 Moreover, we note, the jury learned of the results of the “black box” when the defendant testified, “[t]hat black box that we wasn’t able to read the reading would tell you she was doing 05 seconds before the crash and let off brakes and went 3[,]” and the defense was not prevented from presenting its theory that the victim caused the collision by blocking the road.
 

 This assignment of error is without merit.
 

 LA. CODE CRIM. P. ART. 894.1; EXCESSIVE SENTENCE
 

 In assignment of error number three, the defendant argues the trial court failed to comply with La.Code Crim. P. art. 894.1 in imposing sentence. In assignment of error number 4, the defendant argues the sentence imposed is grossly disproportionate and unconstitutionally excessive. He cites numerous cases in which he claims the defendants received less severe sentences for conduct more reprehensible than his conduct or for conduct which caused greater harm than he caused.
 

 Initially we note there is little value in making sentencing comparisons. It is well settled that sentences must be individualized to the particular offender and to the particular offense committed.
 
 State v. Batiste,
 
 594 So.2d 1, 3 (LaApp. 1st Cir.1991).
 

 The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence.
 
 See
 
 La.Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. In light of the criteria 118expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court’s stated reasons and factual ba
 
 *309
 
 sis for its sentencing decision.
 
 State v. Hurst,
 
 99-2868, p. 10 (La.App. 1st Cir.10/3/00), 797 So.2d 75, 83,
 
 writ denied,
 
 2000-3053 (La.10/5/01), 798 So.2d 962.
 

 Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one’s sense of justice. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion.
 
 Hurst,
 
 99-2868 at pp. 10-11, 797 So.2d at 83.
 

 Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years. At least three years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. If the offender was previously convicted of a violation of La. R.S. 14:98, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The court shall require the offender to participate in a court-approved substance abuse program and may require the |13offender to participate in a court-approved driver improvement program. All such driver improvement courses shall include instruction on railroad grade crossing safety. La. R.S. 14:32.1(B).
 

 Following a sentencing hearing, the defendant was fined $15,000 and sentenced to twenty-five years at hard labor, with twenty years of the sentence without benefit of probation, parole, or suspension of sentence.
 

 Prior to imposing sentence, the court listened to testimony from James Foreman, the victim’s husband, Ashley Pike Bailo, the victim’s sister, Teddy Pike, the victim’s mother, and Greg Pike, the victim’s father.
 

 James Foreman testified he was present to represent himself and his two sons. He indicated that due to the victim’s actions, his sons had no mother to kiss or hug them during their times of need, no mother to go to their Little League games, and no mother to go to their school functions. The closest his children had been to their mother over the previous two years was to touch a slab of marble at the cemetery. His oldest son had to have professional help because the defendant had killed the victim. His youngest son had problems even remembering his mother.
 

 James Foreman testified he had lost his wife of eight years; a wife with whom he had built a life; a wife who had been a wonderful mother to his children; and a wife who had been his best friend. He stated that part of his heart had been torn out and would never be replaced. He also testified that the victim’s death had resulted in a financial strain on his family, because the family had lost half of its income, and he had to give up any extracurricular activities. He indicated that it was almost inevitable that he would have to sell the family home and find a new place to live.
 

 LnJames Foreman asked the court to consider the defendant’s past, including the fact that his bond had been revoked,
 
 *310
 
 and that he had ignored the court’s order not to drive a vehicle. James Foreman also asked the court to consider the consequences of the defendant not being held accountable for his actions. James Foreman asked the court to show no mercy to the defendant.
 

 In imposing sentence, the trial court indicated it had secured a presentenee investigation in the matter, which included the defendant’s statement. The court noted that the defendant claimed he left home at approximately 9:00 p.m. on the night of the offense to go to Smoking Joe’s Bar, where he was dating the bartender. The defendant claimed he normally gave his keys to his girlfriend so that she could drive him home, but he had an argument with her and she told him to leave. The defendant claimed he went to the End of the Line store, purchased a can of Copenhagen, and went three-tenths of a mile down the road before he hit the victim’s car, which he claimed was backing out of a yard.
 

 The court noted that the defendant’s criminal history began on March 12, 1999, when he was charged with underage operation of a vehicle while intoxicated, failure to dim his headlights, and improper lane usage. The defendant pled guilty to an amended charge of reckless operation and paid a $344 fíne. Thereafter, on June 24, 2001, he was charged with reckless driving in Virginia, and convicted on that charge on July 9, 2001. He was fined $250 and his license was suspended for thirty days. Following that offense, on October 30, 2003, he was arrested in Kentucky for operating a motor vehicle while under the influence of alcohol or drugs “with an ag-gravator[,]” leaving the scene of an accident, and failure to render aid or assistance. He was fined $250 and sentenced to thirty days in the county jail, with the sentence suspended except for four days. The court |¾1 noted that an arrest warrant was later issued after the defendant failed to arrive at the county jail, and another warrant was issued after he failed to pay the fine. On June 6, 2003, in St. Helena Parish, the defendant was charged with aggravated battery. He subsequently pled guilty to an amended charge of simple battery and was sentenced to a fine, six months parish jail, suspended, and one year bench probation. On January 17, 2004, the defendant was arrested in Kentucky for operating a motor vehicle while under the influence of alcohol or drugs. A subsequent arrest warrant issued for failure to appear. On November 10, 2005, the defendant was ticketed in Mississippi for speeding. No disposition information was available for the ticket. On February 23, 2006, the defendant was charged with hit- and-run in Louisiana. No disposition information was available for the charge. On August 12, 2008, the defendant was arrested in Mississippi for simple assault, aggravated assault, and domestic assault. No disposition information was available on the first two charges, and the third charge was “remanded to the file for two years[.]”
 

 Additionally, the court noted that following conviction of the instant offense, the court allowed the defendant to remain out on bond so that he would not have to close down his business, and -within two weeks, the defendant “roll[ed] over” his truck.
 

 The trial court did not formally state for the record the Article 894.1 considerations which it took into account and the factual basis therefor.
 
 See
 
 La.Code Crim. P. art. 894.1(C). However, the record reflects that the court considered the Article 894.1 criteria, and thus remand for formal compliance with Article 894.1(C) is not warranted.
 
 See
 
 La.Code Crim. P. art. 921. Moreover, the record supports the sentence imposed.
 
 See
 
 La.Code Crim. P. art. 881.4(D).
 

 
 *311
 
 I22A thorough review of the record reveals the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing sentence.
 
 See
 
 La.Code Crim. P. art. 894.1(A)(1), (A)(2), (A)(3), and (B)(12). Further, the sentence imposed was not grossly disproportionate to the severity of the offense, and thus, was not unconstitutionally excessive.
 

 These assignments of error are without merit.
 

 DECREE
 

 For these reasons, we affirm the conviction and sentence of defendant, Stephen H. McMillan.
 

 [1]
 

 . In accordance with La. R.S. 14:32.1(B), the trial court also ordered the defendant to participate in a court-approved substance abuse program and a court-approved driver improvement program including instruction on railroad grade crossing safety. (R. 29, 1048-49).
 

 [2]
 

 . At the time
 
 Self
 
 was decided, the charge of vehicular homicide, La. R.S. 14:32.1 had not been enacted.
 

 [3]
 

 .
 
 See
 
 La. R.S. 14:12.
 

 [4]
 

 .
 
 See
 
 La. R.S. 14:32.1(A), prior to its amend-mentby 2008 La. Acts, No. 451, § 2.
 

 [5]
 

 .
 
 See
 
 La.Code Crim.
 
 P.
 
 art. 851(3).
 

 [6]
 

 . The defendant would have to satisfy the requirements of La.Code Crim. P. art. 924, et seq., in order to receive such a hearing.