NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2019 KA 0323

STATE OF LOUISIANA

VERSUS

KENNY WAYNE VEAL

Judgment Rendered: **SEP 2 7 2019**

* * * * * * *

APPEALED FROM THE 32ND JUDICIAL DISTRICT COURT
TERREBONNE PARISH, LOUISIANA
DOCKET NUMBER 702,235

HONORABLE GEORGE J. LARKE JR., JUDGE

* * * * * * *

Joe Waitz
District Attorney
and
Jay J. Luke
Ellen Daigle Doskey
Assistant District Attorneys
Houma, Louisiana

Attorneys for Appellee
State of Louisiana

Prentice L. White
Louisiana Appellate Project
Baton Rouge, Louisiana

Attorney for Defendant/Appellant
Kenny Wayne Veal

Kenny Wayne Veal
Angola, Louisiana

Pro Se

BEFORE:  McDONALD, THERIOT, and CHUTZ, JJ.

**McDONALD, J.**

The Terrebonne Parish Grand Jury charged the defendant, Kenny Wayne Veal, with one count of second degree murder (count I), a violation of La. R.S. 14:30.1, and one count of aggravated battery (count II), a violation of La. R.S. 14:34. He pled not guilty on both counts. He waived his right to a jury trial and, after a bench trial, the district court found him guilty as charged on both counts. On count I, the district court sentenced him to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. On count II, the district court sentenced him to a consecutive term of 10 years imprisonment at hard labor.

Contending there are no non-frivolous issues to argue on appeal, defense counsel filed a brief on the defendant's behalf raising no assignments of error and requesting review for error under La. C.Cr.P. art. 920(2). Defense counsel also filed a motion to withdraw as counsel of record. The defendant then filed a pro se brief, challenging the sufficiency of the evidence on count I and claiming ineffective assistance of his trial counsel. For the following reasons, we affirm the convictions and sentences and grant defense counsel's motion to withdraw.

## FACTS

The defendant lived in Gibson, Louisiana, with his father, Eric. L. Jackson, and his uncle, Ronald Marshall Scott, the victim of count II. On June 13, 2015, the defendant became angry with Mr. Scott because he had driven off in a truck that the defendant wanted to use. When Mr. Scott returned, the defendant approached the passenger side of the truck, pointed a BB gun at Mr. Scott and threatened to shoot him if he "[said] another word." Mr. Scott spoke, and the defendant shot him in the mouth, injuring his lip and breaking one of his teeth.

The defendant then ran inside the house. Mr. Scott, who had also gone into the house to clean his mouth, heard what sounded like the defendant "clicking a gun" behind him, which made him think the defendant was going to shoot him in the back. Instead, the defendant left the house, jumped in the truck, and drove away. Frederick Short, who was visiting a friend across the street from the defendant's house, saw "a big gun" in the defendant's hand as he left. Steven Stewart, another witness, also saw the defendant

with a gun as he walked toward the truck. Steven Stewart described the gun as "old." Approximately three to five minutes later, Mr. Scott heard a gunshot.

After leaving the house, the defendant drove the truck down the road and "cut off" and blocked the truck of the victim of count I, Roosevelt Stewart. The defendant then approached the driver's side window of Mr. Stewart's truck and shot him in the left side of his torso. In a recorded statement, the defendant claimed that it was Mr. Stewart who had a gun and that the gun "went off" as he and Mr. Stewart struggled over it. Mr. Stewart died at the scene.

The defendant then drove back to his house, grabbed some clothes, and fled on foot to the home of the grandmother of a long-time acquaintance, Joshua Milton Short. The defendant asked Mr. Short for a ride "to get out of Gibson." Mr. Short did not ask the defendant "what he did," but noted "of course, Gibson is small." Thereafter, Mr. Short asked the defendant if he still had the gun, and he answered affirmatively.

Mr. Jackson, the defendant's father, was away from home on the day of the shootings. When he returned, he discovered his .357 handgun had been taken from a locked box under his bed. The handgun was over 50 years old and rusty.

## ANDERS BRIEF

Defense counsel has filed a brief containing no assignments of error and a motion to withdraw. Referring to the procedures outlined in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So.2d 241 (per curiam), defense counsel indicates that, after a conscientious and thorough review of the record, he could find no non-frivolous issues to raise on appeal.

The procedure outlined in *Anders* was discussed in *State v. Benjamin*, 573 So.2d 528, 529-31 (La. App. 4 Cir. 1990), sanctioned by the Louisiana Supreme Court in *State v. Mouton*, 95-0981 (La. 4/28/95), 653 So.2d 1176, 1177 (per curiam), and expanded by the Louisiana Supreme Court in *Jyles*, 704 So.2d at 242. According to *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400, "if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." To comply with *Jyles*, appellate counsel must review not only the

3

procedural history of the case and the evidence presented at trial, but must also provide "a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." *Jyles*, 704 So.2d at 242 (quoting *Mouton*, 653 So.2d at 1177). When conducting a review for compliance with *Anders*, an appellate court must conduct a full examination of all proceedings to determine whether the appeal is wholly frivolous. *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400; *State v. Wallace*, 15-0218 (La. App. 1 Cir. 9/18/15), 2015 WL 5516186 at *1.

Herein, defense counsel has complied with all the requirements necessary to file an *Anders* brief. Defense counsel reviewed the procedural history of the case, including the pretrial rulings and trial proceedings. He sets forth that, after a conscientious and thorough review of the record, he has found no non-frivolous issues to present on appeal and no ruling of the district court that arguably supports an appeal. Accordingly, he moves to withdraw.

Defense counsel sent a copy of his brief and motion to withdraw to the defendant and informed him that he had the right to file a brief on his own behalf. The defendant then filed a pro se brief. He argues the evidence was insufficient to prove the bullet recovered from Mr. Stewart was the same as the ammunition Mr. Jackson gave to the police. He also argues there was insufficient evidence of specific intent, because there was no evidence he aimed a lethal weapon at Mr. Stewart and fired. Additionally, he argues trial counsel was ineffective because he allowed the defendant to be tried by the district judge rather than by a jury.

## SUFFICIENCY OF THE EVIDENCE

The defendant's pro se challenge to the sufficiency of the evidence concerns count I only. A conviction based on insufficient evidence cannot stand as it violates Due Process. *See* U.S. Const. amend. XIV; La. Const. art. I, §2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See also* La. C.Cr.P. art. 821B; *State v. Ordodi*, 06-0207 (La. 11/29/06), 946 So.2d 654, 660. The *Jackson* standard of

4

review, incorporated in La. C.Cr.P. art. 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. *State v. Mitchell*, 16-0834 (La. App. 1 Cir. 9/21/17), 231 So.3d 710, 731, *writ denied*, 17-1890 (La. 8/31/18), 251 So.3d 410.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, to convict, the factfinder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. The facts then established by the direct evidence, and inferred from the circumstances established by that evidence, must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Watts*, 14-0429 (La. App. 1 Cir. 11/21/14), 168 So.3d 441, 444.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1A(1). Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. *State v. Henderson*, 99-1945 (La. App. 1 Cir. 6/23/00), 762 So.2d 747, 751.

As was his right, the defendant did not testify at trial.[1] *See* U.S. Const. amend. V; La. Const. art. I, §16. The State, however, played a video recording of the defendant's June 17, 2015 interview concerning count I. In the video interview, the defendant claimed he blocked Mr. Stewart's vehicle with his truck, exited his truck, and

5

approached Mr. Stewart to beat him up, because Mr. Stewart was insisting the defendant sell drugs for him. According to the defendant, Mr. Stewart threatened him with a gun and was shot during a struggle for the gun. The defendant denied being armed when he approached Mr. Stewart. He also denied that he ever had control of Mr. Stewart's alleged gun. According to the defendant, Mr. Stewart reached out with his right arm and pointed his gun at the defendant. The defendant was unable to explain, however, how Mr. Stewart's wrist could turn the weapon in such a manner as to inflict the fatal wound. Further, the pathologist who performed the autopsy of Mr. Stewart's body testified at trial that Mr. Stewart was shot from a distance of at least three feet away.

The verdict returned in this case indicates the trier of fact rejected the defendant's version of the incident and credited the evidence that, after shooting Mr. Scott with a BB gun, the defendant retrieved his father's .357 caliber handgun and drove off in the truck he then used to block Mr. Stewart. The location where Mr. Stewart was shot was only about one minute's drive from the defendant's house. Mr. Scott testified he heard a gunshot three to five minutes after the defendant drove off. Frederick Short and Steven Stewart both testified they saw the defendant carrying a gun as the defendant walked to the truck he used to cut off Mr. Stewart. Steven Stewart saw the defendant block Mr. Stewart's truck, get out of his truck, go to the driver's side of Mr. Stewart's truck, and then heard gunshots. Mr. Stewart then exited his truck and fell to the ground.

The murder weapon was never recovered. Mr. Jackson provided the police with a box of ammunition for his missing handgun during their investigation. Louisiana State Police Crime Laboratory Firearms Unit Supervisor Jeff Goudeau testified the bullet recovered from Mr. Stewart's body was similar in diameter, caliber, weight, and crimp ring distance to Mr. Jackson's ammunition. Without having Mr. Jackson's gun, Mr. Goudeau could not say that the bullet recovered from Mr. Stewart's body was fired from that gun.

Any rational trier of fact, viewing the evidence in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the

---

[1] He was questioned, however, about the voluntariness of his June 17, 2015 interview.

exclusion of every reasonable hypothesis of innocence, all of the elements of second degree murder, including that the defendant acted with the specific intent to kill or cause great bodily harm to Mr. Stewart and that the shooting was not accidental. On appeal, this court will not assess the credibility of the witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the factfinder. *State v. Welch*, 12-1531 (La. App. 1 Cir. 3/22/13), 115 So.3d 490, 500-01. In accepting a hypothesis of innocence that was not unreasonably rejected by the factfinder, a court of appeal impinges on a factfinder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law. *State v. Mire,* 14-2295 (La. 1/27/16), 269 So.3d 698, 703 (per curiam). In reviewing the evidence, we cannot say that the district court's determination was irrational under the facts and circumstances presented to it. This assignment of error is without merit.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Regarding his ineffective assistance of counsel claim, the defendant concedes defense counsel advised him of his right to a jury trial under the federal and state constitutions, and "[t]hus, from all appearances defendant Veal was informed of his rights sufficient enough to make a 'knowingly [sic] and intelligent' waiver of his right to trial by jury." He argues, however, defense counsel did not have the defendant's best interests in mind by filing the motion to waive jury trial, because "the State did not possess any substantive evidence that [negated the defendant's] accidental shooting defense." The defendant argues "by counsel filing a motion for a judge trial it was procedurally inferred he disbelieved his defense of innocence." He concludes that his "counsel's failure to advocate defendant Veal's cause, or ... his defense of an accidental shooting before a jury was prejudicial to his defense."

A claim of ineffective assistance of counsel is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal. Such a claim is analyzed under the two-pronged test developed by the United States

7

Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that his trial counsel was ineffective, the defendant must first show that the counsel's performance was deficient, which requires a showing that the counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that the defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that, but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, if the defendant makes an inadequate showing on one of the components, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant. *State v. McMillan*, 09-2094 (La. App. 1 Cir. 7/1/10), 43 So.3d 297, 302-03.

Decisions relating to investigation, preparation, and strategy cannot possibly be reviewed on appeal. These allegations could only be sufficiently investigated in an evidentiary hearing in the district court, where the defendant could present evidence beyond what is contained in the instant record.[2] Accordingly, the defendant's claims are not subject to appellate review. To the extent the defendant is claiming ineffective assistance of counsel caused him to waive his right to a jury trial, and that the outcome of his trial would have been different had he not exercised this right, he may raise this claim at an evidentiary hearing for post-conviction relief. That is, the defendant must show that, but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. *See State v. Boswell*, 12-1568 (La. App. 1 Cir. 4/26/13), 2013 WL 1791841 at *5. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. *See McMillan*, 43 So.3d at 307. This assignment of error is not subject to appellate review.

---

[2] The defendant would have to satisfy the requirements of La. C.Cr.P. art. 924, et seq., to receive such a hearing. *State v. Caminita*, 16-0121 (La. App. 1 Cir. 9/16/16), 203 So.3d 1100, 1107 n.5.

After an independent review of the record, we find no reversible errors under La. C.Cr.P. art. 920(2). Furthermore, we find no non-frivolous issues or district court rulings that would arguably support this appeal. Accordingly, the defendant's convictions and sentences are affirmed. Defense counsel's motion to withdraw is granted.

**CONVICTIONS AND SENTENCES AFFIRMED; MOTION TO WITHDRAW GRANTED.**