WHIPPLE, C.J.
[¿The defendant, Dennis M. Welch, was charged by amended bill of information with one count of fourth-offense operating a vehicle while intoxicated[1] (DWI), a violation of LSA-R.S. 14:98, and pled not guilty. Following a bench trial, the defendant was found guilty as charged. He was fined $5,000.00 and sentenced to twenty-five years at hard labor, with the first two years of the sentence to be served without benefit of probation, parole, or suspension of sentence. He now appeals, contending the trial court: (1) abused its discretion in denying the motion to suppress AIT Laboratories’ certificate of analysis; (2) erred in allowing the testimony of Dr. George Behoniek; (3) erred in admitting into evidence AIT Laboratories’ certificate of analysis; (4) erred in finding the evidence of record sufficient to support a conviction without AIT Laboratories’ certificate of analysis; (5) erred in considering predicate DWI offenses older than ten years; and (6) abused its broad discretion by imposing an excessive sentence. For the following reasons, we affirm the defendant’s convic *494 tion and sentence, and remand for an evi-dentiary hearing on the issue of waiver of a jury trial.
FACTS
St. Tammany Parish Sheriffs Office Deputy Jamie Raquet testified at trial. On March 17, 2011, at approximately 6:00 p.m., he investigated a vehicle crash on Louisiana Highway 437 at North Fitzmor-ris Road, north of Covington. The crash involved one vehicle, driven by the defendant. Deputy Raquet noted that the | ¿vehicle was off the east side of the roadway, overturned on its passenger side. The vehicle had travelled through a ditch, impacted on the driver’s side, overturned on its side, and rotated counterclockwise, finally coming to a stop in a barbed wire fence. Deputy Raquet detected a strong odor of an alcoholic beverage emanating from the vehicle’s interior. Deputy Ra-quet did not see the emergency brake on the vehicle pushed down.
Covington Police Department Sergeant Jimmy Slade had witnessed the crash. He saw the vehicle travelling forty miles per hour as it ran through a stop sign. He saw the defendant lose control of the vehicle as the defendant attempted to turn southbound and cross two lanes of traffic before the vehicle entered a ditch.
The defendant had no observable signs of injury and stated he was not hurt. According to Deputy Raquet, the defendant’s speech was slurred, the defendant stuttered, and the defendant’s movements were lethargic and slow. The defendant claimed he had only “drank a beer at lunch time,” but he also stated that he had taken the prescription medications Paxil, Klono-pin,[2] Fioricet, and another medication “morning and lunch.” The defendant claimed his vehicle had defective brakes and that he had pushed the emergency brake, but it had not worked.
The defendant stated he had been trav-elling from River Forest subdivision to Fairhaven Road, a distance of approximately twelve miles. The defendant claimed he left at 3:30 p.m. The defendant thought the accident had occurred at 4:00 p.m., when, in fact, he actually had crashed the vehicle at approximately 5:45 p.m. The defendant consented to a blood and urine test in the hospital, but he could not stand up without swaying back and forth. The defendant staggered on |4the way to the bathroom to provide a urine sample and complained of a pain in his side. Also, at the time of the accident, his driver’s license was suspended.
Based on observations of the defendant, the manner in which he was speaking, his lethargic movements, and his problem with normal motor skills, Deputy Raquet concluded that the defendant was operating the vehicle while under the influence of his prescription medications. Thus, Deputy Raquet arrested him for DWI.
DISCUSSION

Admissibility of AIT Laboratories’ Certifícate of Analysis

(Assignment of Error No. 1)
In assignment of error number 1, the defendant argues the trial court erred in denying his motion to suppress the certificate of analysis by AIT Laboratories (“AIT”) because his blood sample was not transported for analysis in accordance with La. Administrative Code, Title 55, part I, § 581.
*495 A motion to suppress is available to question the admissibility of chemical test results that can result in the legal presumption of intoxication. State v. Shirley, 2008-2106 (La.5/5/09), 10 So.3d 224, 232. Before the State may avail itself of the statutory presumption of the defendant’s intoxication arising from chemical analysis of his blood, it is incumbent on the State to show strict compliance with the detailed procedures adopted to secure the efficacy and reliability of the chemical test. Id.
Prior to amendment in May of 2011, La. Administrative Code, Title 55, part I, § 581 provided, in pertinent part:
C. The sample taken for analysis should be refrigerated and delivered to a designated collection site within 24 hours following the end of the collecting officer’s shift. It shall then be transported to the laboratory utilized for analysis at the earliest opportunity after collection, not to exceed 7 days.
| fiPrior to trial, the defendant moved to suppress the results of the analysis of his blood sample, arguing that the documentation from the State indicated that twenty-two days had passed between the drawing of the blood and its receipt for testing. At the hearing on the motion, the defense introduced a report from AIT indicating the sample tested was collected on March 17, 2011, and received on April 8, 2011. The State introduced documentation indicating that the sample was received by the Louisiana State Police Crime Laboratory on March 23, 2011. Additionally, the State presented the testimony of Louisiana State Police Crime Laboratory Forensic Analyst Robert Spinks, who stated that the sample was received by the Louisiana State Police Crime Laboratory on March 23, 2011. He conducted a blood alcohol test on the sample, which was negative. He further indicated the Louisiana State Police Crime Laboratory had a contract with AIT, a toxicology firm from Indianapolis, to help reduce the backlog of items to be tested. At the conclusion of the trial, the trial court denied the motion to suppress.
When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion, i.e., unless such ruling is not supported by the evidence. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 280-81. However, a trial court’s legal findings are subject to a de novo standard of review. See State v. Hunt, 2009-1589 (La.12/1/09), 25 So.3d 746, 751.
The trial court did not err or abuse its discretion in denying the motion to suppress the results of the analysis of the blood sample obtained from the defendant. La. Administrative Code, Title 55, part I, § 581 was not violated. The record demonstrates that the sample at issue was “transported to the laboratory utilized for analysis” within 7 days of collection. While the sample was subsequently tested for Rthe presence of other drugs by AIT later than 7 days after collection, this testing occurred at a laboratory subcontracted with the State Police laboratory due to a backlog at the Louisiana State Police Crime Laboratory.
Thus, this assignment of error lacks merit.

Admissibility of Dr. George Behonick’s Testimony

(Assignment of Error No. 2)
In the first part of assignment of error number 2, the defendant argues the trial court erred in allowing the simultaneous broadcast testimony of Dr. George Behon-ick because the State failed to provide timely written notice to the defense under LSA-R.S. 15:502(B).
*496 Louisiana Revised Statute 15:502 provides, in pertinent part:
A. The court may authorize the following persons to testify by simultaneous transmission through audiovisual equipment, if such technology is available in the courtroom, during any criminal proceeding, ...:
(1) Employees of criminalistics laboratories-.
[[Image here]]
B. The party seeking to offer testimony as provided in Subsection A of this Section shall provide written notice to opposing counsel not less than thirty days prior to the commencement of the proceeding.
[[Image here]]
D. Nothing in this Section shall be construed as to prohibit the use of a subpoena to compel any such witness to physically appear and testify in person. When the attorney for the defendant, or the defendant acting in his own defense, requests that a subpoena be issued to the person who performed the examination or analysis, the request shall be in writing or shall contain a certification that the attorney or the defendant intends in good faith to conduct the cross-examination.
On February 13, 2012, the State moved to present the testimony of Dr. George Behonick, an expert witness from a crime laboratory, by simultaneous 17broadcast transmission. On February 17, 2012, the defendant filed a motion opposing the use of simultaneous broadcast transmission.
The defendant’s motion set forth that on September 29, 2011, the defense had notified the State that the defense wanted the toxicologist who conducted the blood analysis to appear in person in open court. The defendant further alleged that the State had failed to give the defense the required 30-day notice prior to the February 29, 2012 trial date. Additionally, the motion set forth that the defense had requested a subpoena of the toxicologist who performed the blood analysis.
The motions were heard on February 29, 2012. The State indicated it had three officers ready to testify and asked the court to keep the matter open for the presentation of additional testimony by “Skype” at a later date. The defense objected to holding the matter open. The court continued the matter until March 15, 2012, and the defense objected. Thereafter, on March 15, 2012, the State presented testimony from Dr. George Behonick by “Skype.”
The granting or denial of a motion for continuance rests within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of a clear abuse of discretion. State v. Albert, 96-1991 (La.App. 1st Cir.6/20/97), 697 So.2d 1355, 1360.
There was no clear abuse of discretion in continuing the February 29, 2012 proceeding to March 15, 2012. The trial court was attempting to give the defense the benefit of the full period of notice specified in LSA-R.S. 15:502(B). Moreover, the defense failed to show how the defendant would be prejudiced by the continuance.
This portion of assignment of error number 2 also lacks merit.
| sConfrontation Clause Violation
(Assignment of Error No. 2)
In this portion of assignment of error number 2, the defendant also argues that his confrontation rights were violated because the State failed to present testimony from Dr. Gene Schwilkie, the certifying scientist on the AIT certificate of analysis.
*497 In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. U.S. Const, amend. VI. The Confrontation Clause bars “admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.” Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004); see also Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (Massachusetts “certificates of analysis” used to establish that the substance hidden in the police ear used to transport a defendant and two other men contained cocaine were testimonial statements subject to the Confrontation Clause).
Prior to amendment by 2012 La. Acts No. 69, § 1, LSA-R.S. 15:499(A) authorized all criminalistics laboratories established by the laws of Louisiana or of the United States to make proof of examination and analysis of physical evidence by the certificate of the person in charge of the facility in which such examination and analysis was made.
Louisiana Revised Statute 15:500 provides, in pertinent part, that:
[i]n all criminal eases ... the courts of this state shall receive as evidence any certificate made in accordance with LSA-R.S. 15:499 subject to the conditions contained in this Section and LSA-R.S. 15:501. The certificate shall be received in evidence as prima facie proof of the facts shown thereon, and as prima facie proof of proper |9custody of the physical evidence listed thereon from time of delivery of said evidence to the facility until its removal therefrom.
Louisiana Revised Statute 15:501 provides:
A.The party seeking to introduce a certificate made in accordance with R.S. 15:499 shall, not less than forty-five days prior to the commencement of the trial, give written notice of intent to offer proof by certificate. Such notice shall include a copy of the certificate.
B. The attorney for the defendant, or the defendant acting in his own defense, if not represented by counsel, may demand that the person making the examination or analysis testify by filing a written demand and serving it upon the district attorney or attorney general seeking to introduce the certificate. If such a demand is made timely as set forth below, the certificate shall not constitute prima facie proof of the facts thereon as set forth in R.S. 15:500.
C. Demand for the testimony of the person making the examination or analysis shall be filed and served by counsel for the defendant, or by a defendant acting as his own counsel, within thirty days of the receipt of the notice provided for in Subsection A of this Section. The trial court may extend this thirty-day period for good cause shown if such request is made prior to the expiration of the thirty days.
D. If no request for additional time is made prior to the expiration of the thirty-day period, an extension of time in which to make such a demand may be made only upon a showing of exceptional circumstances. Any allegation that such circumstances exist shall constitute a preliminary plea on the defendant’s behalf for the purposes of Louisiana Code of Criminal Procedure Article 580. The demand shall be made in writing and notice shall be served on the district attorney or the attorney general prosecuting the matter. The court shall conduct a contradictory hearing to determine if the extension is warranted.
E. The filing of a demand by the defendant does not prevent the admission *498 of the certifícate or its contents in any other manner otherwise appropriate pursuant to the Louisiana Code of Evidence or its ancillaries.
As this court has previously noted, LSA-R.S. 15:501 is precisely the kind of “notice-and-demand” statute that the court in Melendez-Diaz recognized to be permissible under the Confrontation Clause. State v. Beauchamp, 2010-0451 (La.App. 1st Cir.9/10/10), 49 So.3d 5, 9. Further, as the Louisiana Supreme Court | inhas held, states remain free to impose reasonable restrictions on a defendant’s confrontation rights. State v. Simmons, 2011-1280 (La.1/20/12), 78 So.3d 743, 747 (per curiam).
Dr. -George Behonick testified he was a forensic toxicologist employed by the American Institute of Toxicology Laboratories (AIT). The defense stipulated he was an expert in the field of forensic toxicology. Dr. Behonick indicated that Dr. Gene Schwilkie was a Ph.D. toxicologist with AIT. Dr. Behonick testified that the report generated by AIT concerning the sample of the defendant’s blood was reviewed and released by Dr. Schwilkie. The defense objected to Dr. Behonick’s testimony on the basis that Dr. Behonick was not the person “who did the testing.” The court noted the objection, but allowed Dr. Behonick to testify.
Dr. Behonick testified that the positive findings of drugs and their concentrations in the sample of the defendant’s blood were generated by the use of mass spectrophotometry. He indicated that the instrumentation used for the testing was recognized by Louisiana as appropriate for testing bodily fluids. He further stated that testing on the defendant’s sample indicated the presence of 6.8 micrograms per milliliter of butalbital. Dr. Behonick stated that butalbital is a barbiturate and a central nervous system depressant. Notably, the effects of the drug include lethargy, confusion, disorientation, and uncoor-dination. Dr. Behonick indicated that testing on the defendant’s sample also indicated the presence of 11.8 nanograms per milliliter of clonazepam. Dr. Behonick stated that clonazepam is also a central nervous system depressant. The effects of the drug include sedation, uncoordination, double vision, slurred speech, dizziness, and confusion. Dr. Behonick also stated that testing on the defendant’s sample indicated the presence of norpropoxy-phene, a metabolite of propoxyphene. He | nstated that norpropoxyphene and pro-poxyphene are central nervous system depressants, and that the effects of these drugs include lethargy, diminished alertness, and sleepiness. Dr. Behonick indicated that drugs such as butalbital, clona-zepam, and propoxyphene carry standard cautions to their users warning them of the effects of the drugs in trying to operate hazardous machinery.
Considering Dr. Behonick’s credentials and the basis for his explanation of the test results, we find no confrontation clause violation in allowing Dr. Behonick, a forensic toxicologist, to testify on the basis of the report by his fellow toxicologist, who did not testify at trial. See State v. Bolden, 2011-2435 (La.10/26/12), 108 So.3d 1159, (per curiam).
This portion of assignment of error number 2 also lacks merit.

Proof of AIT’s Permit

(Assignment of Error No. 3)
In this assignment of error, the defendant argues that the trial court erred in admitting the AIT certificate of analysis because the State failed to submit proof of AIT’s permit prior to trial.
Louisiana Revised Statute 32:663 provides, in pertinent part:
*499 A. (1) Chemical analyses of the person’s blood, urine, breath, or other bodily substance, to be considered valid under the provisions of this Part, shall have been performed according to methods approved and promulgated by the Department of Public Safety and Corrections and performed by an individual or laboratory possessing a valid permit issued by said department for the purposes set forth in this Part. The Department of Public Safety and Corrections is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals or laboratories to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the department in accordance with regulations approved and promulgated by the department pursuant to the Administrative Procedure Act.
(2) Chemical analyses of a person’s blood, urine, breath, or other bodily substance may be conducted by an out-of-state individual or laboratory provided that the chemical analyses are performed in | ^accordance with the methods approved and promulgated by the Department of Public Safety and Corrections or are performed by an individual or laboratory possessing a valid permit. Such analyses shall be considered valid under the provisions of this Part and admissible and competent evidence in the courts of this state and in administrative law hearings if performed in accordance with the methods approved and promulgated by the Department of Public Safety and Corrections or are performed by an individual or laboratory possessing a valid permit.
[[Image here]]
C. Issuance of a permit to such a certified individual or laboratory makes all laboratory forensic test results conducted on a person’s blood, urine, or other bodily substance by such individual or laboratory valid under the provisions of this Part, and admissible and competent evidence of intoxication in any court of law or administrative hearing.
At trial, the State questioned Dr. Behon-ick concerning certification .of AIT Laboratories and how long it had done business with the Louisiana State Police Crime Lab. Dr. Behonick referenced dates on permits obtained by AIT. Defense counsel objected to any reference to a permit because he had “never seen this permit,” and stated, “I would like to see a copy of it.” The State indicated it did not have the referenced permit. Dr. Behonick, however, stated he did have the permit. The State then asked if he could fax the permit to the court. Dr. Behonick indicated he did not currently have access to a fax machine, but could “send it as a PDF.” The defense then objected to the permit being emailed “at the last minute.” Thereafter, the court provided Dr. Behon-ick with an email address, and he sent a copy of the permit by email during a recess. Subsequently, the court provided the State and the defense with copies of the permit and an opportunity to review the permit.
On review, we find no error or abuse of discretion. Louisiana Revised Statute 32:663 does not require the State to obtain the referenced permit from AIT prior to trial and supply it to the defense. Moreover, the defense was supplied |iawith a copy of the permit and was given an opportunity to review the document prior to cross-examining Dr. Behonick.
This assignment of error also lacks merit.

Sufficiency of the Evidence

(Assignment of Error No. 4)
In assignment of error number 4, the defendant argues, “[assuming AIT’s Cer *500 tificate of Analysis was properly excluded,” the evidence was insufficient to support the conviction because the evidence did not exclude the reasonable hypothesis that he was impaired from a head injury he suffered during his automobile accident.
Initially, we note that we have addressed and rejected the defendant’s arguments alleging error in the admission of AIT’s certifícate of analysis. Accordingly, the instant assignment of error is founded on an erroneous assumption by the defense. Nonetheless, even absent consideration of the certifícate of analysis, we find there was sufficient evidence to support the verdict under the applicable standard.
The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant’s identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana’s circumstantial evidence test, which requires, in part, that “assuming every fact to be proved that the evidence tends to prove,” in order to convict, every reasonable hypothesis of innocence is excluded. State v. Wright, 98-0601 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157 & 2000-0895 (La.11/17/00), 778 So.2d 732 (quoting LSA-R.S. | u15:438).
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 730 So.2d at 487. Intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330, 1334 (La.1983).
The crime of operating a vehicle while intoxicated is the operating of any motor vehicle when the operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in LSA-R.S. 40:964; or when the operator is under the influence of alcohol and one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription. LSA-R.S. 14:98(A)(1)(c) and (A)(1)(d)(i).
After a thorough review of the record, we are convinced that any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of any reasonable hypotheses of innocence raised by the defendant at trial, all of the elements of fourth-offense DWI and the defendant’s identity as the perpetrator of that offense. A police officer witnessed the defendant run through a stop sign, lose control of his vehicle, and crash into a ditch. Thereafter, the defendant admitted he had consumed alcohol and prescription medications, 11fiincluding at least one controlled dangerous substance. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder’s determination of guilt. State v. Glynn, 94-0332 (La.App. 1st Cir.4/7/95), 653 So.2d 1288, 1310, writ denied, 95-1153 (La.10/6/95), 661 So.2d 464. In reviewing the evidence, we cannot say that the fact finder’s determination was irrational under *501 the facts and circumstances presented to the trial judge herein. See State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the fact finder. See State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam).
This assignment of error also lacks merit.

Failure to Quash Predicate Offenses

(Assignment of Error No. 5)
In assignment of error number 5, the defendant argues the trial court erred in denying the motion to quash predicate offenses based upon said offenses being over ten years old.
Louisiana Revised Statute 14:98(F)(2)[3] provided, in pertinent part:
For purposes of this Section, a prior conviction shall not include a conviction for an offense under this Section ... if committed more than ten years prior to the commission of the crime for which the defendant is being tried and such conviction shall not be considered in the assessment of penalties hereunder. However, periods of time during which the offender was awaiting trial, on probation for an offense described in Paragraph (1) of this Subsection, under an order of attachment for failure to appear, or | ^incarcerated in a penal institution in this or any other state shall be excluded in computing the ten-year period.
Prior to trial, the defense moved to quash and/or suppress the predicate offenses on the basis that they were excluda-ble under LSA-R.S. 14:98(F)(2).
In connection with predicate # 1, first-offense DWI committed on March 17, 1990, the State introduced documentation indicating that on May 7, 1990, the defendant pled guilty, was fined $300.00 plus court costs, and was sentenced to 90 days in the parish jail, suspended, and two years probation. In connection with predicate # 2, third-offense DWI, committed on December 20, 1997, the State introduced documentation indicating that on June 15, 1998, the defendant pled guilty, was fined $2,000.00 plus court costs, and was sentenced to three years without hard labor, with six months of the sentence without benefit of probation, parole, or suspension of sentence and two and one half years of the sentence suspended, and two years probation. In connection with predicate #3, fourth-offense DWI, committed on May 31, 1998, the State introduced documentation indicating that on June 25,1998, the defendant pled guilty, was fined $5,000.00 and was sentenced to ten years at hard labor, with two years of the sentence without benefit of probation, parole, or suspension of sentence. In connection with predicate #4, second-offense DWI, committed on May 15, 1997, the State introduced documentation indicating that on August 13,1997, the defendant pled guilty, was fined $500.00 plus court costs, and was sentenced to six months in parish jail, suspended, and two years probation.
At the final hearing on the motion, the defense indicated it had stipulated to the files introduced by the State concerning the predicate offenses, but argued that *502 those files did not contain information concerning probationary periods. The State responded “any time probation is terminated before it’s set to expire, then that’s 117the time that they’re on probation. You need to file a motion to terminate probation early and that has to be filed into those records, the Clerk’s record.” The trial court stated it had reviewed the clerk’s records and found no indication of early termination of probation. Additionally, the court found the defendant had been sentenced to ten years on May 31, 1998 and “this links up.” The court found that predicate # 1 did not “link[ ] up.”[4] The court denied the motion to quash.
When a trial court grants or denies a motion to quash, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion. See State v. Odom, 2002-2698 (La.App. 1st Cir.6/27/03), 861 So.2d 187, 191, writ denied, 2003-2142 (La.10/17/03), 855 So.2d 765. However, a trial court’s legal findings are subject to a de novo standard of review. See State v. Smith, 99-2094, 99-2015, 99-2019, 99-0606 (La.7/6/00), 766 So.2d 501, 504.
On the record before us, we find no error in the denial of the motion to quash. The oldest predicate offense used to establish the defendant’s fourth-offense DWI status, predicate # 4, was committed thirteen years and three hundred and six days before the instant offense. Therefore, in order for predicate # 4 to escape exclusion under LSA-R.S. 14:98(F)(2), the State had to establish that the defendant was “awaiting trial, on probation for an offense described in [LSA-R.S. 14:98(F)(1) ], under an order of attachment for failure to appear, or incarcerated in a penal institution in this or any other state” for at least three years and three hundred and six days. The documentation introduced by the State indicated that the defendant was on probation in connection with predicates # 2 and # 4 from at least August 13, 1997 to June 15, 2000. Additionally, the defendant was incarcerated in connection with predicate # 3 for at least two years.
| ^Accordingly, this assignment of error also lacks merit.

Excessive Sentence

(Assignment of Error No. 6)
In assignment of error number 6, the defendant argues the trial court imposed an excessive sentence herein.
Louisiana Code of Criminal Procedure article 881.1 provides, in pertinent part:
A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
[[Image here]]
B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.
[[Image here]]
E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
*503 The defendant failed to make or file a motion to reconsider sentence in this matter. Accordingly, review of this assignment of error is procedurally barred. See LSA-C.Cr.P. art. 881.1(E); State v. Duncan, 94-1563 (La.App. 1st Cir.12/15/95), 667 So.2d 1141, 1143 (en banc per curiam).

REVIEW FOR ERROR

Initially, we note that our review for error is pursuant to LSA-C.Cr.P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and “error that is discoverable by a mere |19inspection of the pleadings and proceedings and without inspection of the evidence.” LSA-C.Cr.P. art. 920(2).
The right to trial by jury in felony and certain misdemeanor cases is protected by both the federal and state constitutions. See U.S. Const, amend. VI; La. Const, art. I, §§ 16, 17. Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury, but no later than forty-five days prior to the trial date, and the waiver shall be irrevocable. La. Const, art. I, § 17(A). A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the trial court of his right to waive trial by jury. LSA-C.Cr.P. art. 780(A).
The June 15, 2011 minutes of arraignment reflect that this case was originally set for jury trial on August 22, 2011. Thereafter, the October 6, 2011 minutes state, “[fjurther, the Felony Jury Trial being set on October 10, 2011, on motion of the Defense Counsel, Court ordered the Felony Judge Trial continued to January 4, 2012.” The October 6, 2011 transcript sets forth the following:
[State]: Dennis Welch has been continued and converted to a Judge Trial.
[Court]: All right.
(Thereupon, the [proceedings were
[concluded)
The record reflects that at some point, the mode of trial in this matter was changed from a jury trial to a bench trial. The record, however, does not contain a jury-trial waiver. The waiver of a criminal defendant’s right to trial by jury is not presumed; there operates, in fact, a presumption against such waiver which must be rebutted. State v. Cappel, 525 So.2d 335, 337 (La.App. 1st Cir.), writ denied, 531 So.2d 468 (La.1988).
120When the record does not clearly indicate a valid waiver of the right to a jury trial, the recent trend has not been to reverse, but to remand the case to the trial court for an evidentiary hearing on the issue of whether a valid jury waiver was obtained. See State v. Nanlal, 97-0786 (La.9/26/97), 701 So.2d 963. In State v. Cappel, 525 So.2d at 337 n. 3, this court noted that when the record is insufficient to determine whether the defendant knowingly and intelligently waived his right to a jury trial, the testimony by the defendant and defense counsel at an evidentiary hearing would certainly be relevant, if not dispositive of the issue.
Accordingly, we remand this case for the trial court to conduct an evi-dentiary hearing within thirty days to determine whether defendant knowingly and intelligently waived his right to a jury trial. If the evidence shows defendant did not execute such a waiver, the trial judge is instructed to set aside the conviction and sentence and grant a new trial. We note that double jeopardy does not preclude the State from retrying a defendant whose conviction is set aside because of judicial error. See State v. Mayeux, 498 So.2d *504 701, 705 (La.1986). If, on the other hand, the trial court concludes that the defendant did waive his right to a jury trial, the defendant may appeal only that decision to this court.
CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR EVIDEN-TIARY HEARING ON JURY TRIAL WAIVER ISSUE.
McCLENDON, J., concurs and assigns reasons.
HIGGINBOTHAM, J., dissents.

. Predicate # 1 was set forth as the defendant’s May 7, 1990 guilty plea, under Twenty-Second Judicial District Court Docket # 188620, to first-offense DWI. Predicate # 2 was set forth as the defendant’s June 15, 1998 guilty plea, under Twenty-Second Judicial District Court Docket # 283263, to third-offense DWI. Predicate # 3 was set forth as the defendant’s June 25, 1998 guilty plea, under Twenty-Second Judicial District Court Docket # 287082, to fourth-offense DWI. Predicate # 4 was set forth as the defendant’s August 13, 1997 guilty plea, under Twenty-Second Judicial District Court Docket #274319, to second-offense DWI.

. Klonopin (clonazepam) is a schedule IV controlled dangerous substance. See LSA-R.S. 40:964, Schedule IV(B)(9).

. The applicable version of LSA-R.S. 14:98 is the version in effect on the date of the commission of the instant offense. See State v. Barbay, 2007-1976 (La.App. 1st Cir.3/26/08), 985 So.2d 749, 751. The instant offense was committed on March 17, 2011. Accordingly, we apply LSA-R.S. 14:98(F)(2) prior to amendment by 2012 La. Acts No. 547, § 1.

. Proof of three of the four predicate offenses alleged was sufficient to establish the instant offense as a fourth-offense DWI.